Farlin v. Sook.

## J. G. FARLIN v. H. S. SOOK.

1. CONDUCT OF ATTORNEY, *Not Commendable; Case-Made, Valid.* The court below, after rendering judgment in favor of the defendant and against the plaintiff, gave the plaintiff sixty days within which to make a case for the supreme court, and to serve the same upon the opposite party, and also ordered at the same time that the defendant should have twenty days after service within which to suggest amendments, and also ordered that the case should be settled within thirty days after the amendments were suggested. The plaintiff, by his attorney, C., made a case for the supreme court, and served the same upon the defendant on the fifty-ninth day after the judgment was rendered, taking from the defendant an acknowledgment of service, written on a separate piece of paper, and agreed with the defendant to hand the case to the attorney for the defendant, within ten days. Four days afterward the plaintiff's attorney wrote the following words on the case-made, to wit: "This case-made is this 15th day of March, 1881, served upon the defendant's attorney, J. G. W.," and signed the same; and also at the same time served the case upon the defendant's attorney, and took an acknowledgment of service from the defendant's attorney, in the following words, to wit: "Received the above pretended case-made this 15th day of March, 1881. J. G. W., attorney for defendant. No amendments to suggest. J. G. W., attorney for defendant." Previous to the time that the case was served upon the defendant's attorney, the time for making and serving the case had expired, and as the plaintiff's attorney had not informed the defendant's attorney that the case had ever before been served, and as the defendant's attorney had no knowledge of any such service, he believed that the case was a nullity, and did not think that it was necessary to suggest any amendments, and allowed the case to be settled, signed and authenticated, without objection, and without suggesting any amendments. Afterward, and on March 19, 1881, the case was settled and signed by the court, and duly authenticated. The case was then brought to the supreme court; whereupon the defendant's attorney moved to dismiss the case, upon the ground that it had not been properly made and served. The case, upon its face, appeared to be a nullity; but on the hearing of the motion, plaintiff's attorney introduced in evidence the separate piece of paper upon which the defendant himself had acknowledged service of the case, which paper showed that the case had been served in time. To hold that the case is valid will not require that final judgment should be rendered in favor of the plaintiff or against the defendant, but at most will require only that the judgment of the court below should be reversed, and the case remanded for a new trial. *Held,* That, although the conduct of the plaintiff's attorney is not commendable, in failing to inform the defendant's attorney that the case had been

served on the defendant within proper time, and leading the defendant's attorney to believe that the case was served for the first time on him, and thereby obtaining the advantage of having the case settled, signed and authenticated, without any suggestion of amendments from the defendant's attorney, and of having it so settled, signed and authenticated several days before the same could have been settled or signed if the defendant's attorney had taken the full time given him by the court within which to suggest amendments; yet, under all the circumstances of the case, the motion of the defendant's attorney will be overruled, and the case will be considered as valid.

2. ———— *Not a Homestead.* Under the homestead exemption laws, no person can hold property exempt from execution or forced sale, unless the property is "occupied as a residence by the family of the owner." (Const., art. 15, § 9; Comp. Laws 1879, p. 437, § 1.) Therefore, where the owner of the property resides upon the same, but his family, consisting of a wife and children, have never been in Kansas, but reside in Illinois, and it is not and never has been the intention of the owner to bring them to Kansas, or to have them reside upon the property, *held,* that the owner cannot hold the property exempt from execution and forced sale under the homestead exemption laws.

*Error from Chase District Court.*

EJECTMENT brought by *Farlin* against *Sook*, to recover the possession of certain lands in Chase county. Trial at the January Term, 1881, of the district court, before C. N. S., judge *pro tem.*, and a jury, and verdict and judgment for the defendant. The plaintiff brings the case here. The opinion states the facts.

*Cunningham & McCarty,* for plaintiff in error.

*J. G. Waters,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of ejectment, brought by J. G. Farlin against H. S. Sook, to recover the northeast quarter and the northeast quarter of the southeast quarter of section thirty (30) in township eighteen (18) of range eight (8), in Chase county, Kansas. Charles Ahrendt was the original owner of the property, and both parties claim under him. The plaintiff claims by virtue of a sheriff's deed, executed May 24, 1878, in an action in which J. G. Farlin was the

plaintiff and Charles Ahrendt was the defendant. The plaintiff, however, claims that his title related back to June 21, 1877, when the property was attached in said action. The defendant claims under a warranty deed from Caroline Schutt and her husband to himself, executed January 15, 1879, and a warranty deed from said Charles Ahrendt to Caroline Schutt, executed May 3, 1877, and recorded May 11, 1877. The case was tried before the court and a jury, and judgment was rendered in favor of the defendant and against the plaintiff, and the plaintiff now brings the case to this court for review upon a case-made for the supreme court. The defendant moves to dismiss the case from this court, upon the ground that the case was not made for this court within the time prescribed by the court below. The court below rendered judgment in this case on January 11, 1881, and gave the plaintiff sixty days within which to make a case for the supreme court, and to serve it upon the opposite party, and also at the same time ordered that the defendant should have twenty days after service within which to suggest amendments, and also ordered that the case should be settled within thirty days after the amendments were suggested. The plaintiff, by his attorney, E. W. Cunningham, made a case for the supreme court, and served the same upon the defendant, H. S. Sook, on March 11, 1881, and took from the defendant the following written acknowledgment of service, to wit:

"COTTONWOOD FALLS, KANSAS, March 11, 1881.

"This is to certify that E. W. Cunningham, of the firm of Cunningham & McCarty, this day served on me the case-made in the case of J. G. Farlin v. H. S. Sook, tried in the Chase county district court, in January, 1881, and kept the same to deliver to J. G. Waters, of Topeka, within ten days.

"H. S. SOOK."

This acknowledgment of service was not written on or attached to the case-made, but was written on a separate piece of paper, and retained by Cunningham. The defendant claims that the plaintiff's attorney also agreed to inform the defendant's attorney, J. G. Waters, of the said service made

on the said defendant; but the plaintiff's attorney claims that nothing was agreed to further than is shown in the written acknowledgment of service. On March 15, the plaintiff's attorney, E. W. Cunningham, served the case on J. G. Waters, and asked Waters to accept such service, which Waters agreed to do. Cunningham then wrote the following words on the case-made, and signed the same, to wit: "This case-made is this 15th day of March, 1881, served upon the defendant's attorney, J. G. Waters.—CUNNINGHAM & McCARTY."

And Waters then wrote thereunder the following acknowledgment of service, and signed the same, to wit: "Received the above pretended case-made this 15th day of March, 1881.— J. G. WATERS, *Attorney for Defendant.* No amendments to suggest.—J. G. WATERS, *Attorney for Defendant.*"

The time for making and serving the case had expired on March 12, 1881, and as this service of the case on Waters was made on March 15, 1881, Waters believed that the case-made was a nullity, and told Cunningham so, and told him that for that reason he had no amendments to suggest. Cunningham did not tell Waters that he had served the case on the defendant, Sook, and Waters had no knowledge of the same. The case was then settled and signed by the court, on March 19, 1881.

As the case was not served on the defendant until March 11, 1881, the defendant had a right under the order of the court, if he had claimed it, to suggest amendments at any time within twenty days thereafter, or up to March 31, 1881; but the defendant's attorney, believing that the case-made by the plaintiff was not served in time, and was therefore a nullity, did not think it necessary to suggest any amendments, and did not make any objections to having the case settled, signed and authenticated on March 19, 1881. This want of knowledge on the part of the defendant's attorney enabled the plantiff to have his case settled, signed and authenticated without any amendments being made thereto, and to have it so settled, signed and authenticated many days sooner than

it could have been settled, signed and authenticated if the defendant's attorney had taken his full twenty days within which to suggest amendments.

The case as it was brought to this court appears on its face to be a nullity. There is nothing appearing in the case showing that it had been served upon the defendant within the time prescribed by the court below; but on the hearing of the motion to dismiss the case, the plaintiff introduced the written acknowledgment of service signed by the defendant, H. S. Sook. From this written acknowledgment, it appears that service was made upon the defendant within the time prescribed by the court below; but the defendant, by his attorney, J. G. Waters, claims that the case ought, nevertheless, to be dismissed on the ground that the plaintiff's attorney wrongfully misled the defendant's attorney, causing him, the defendant's attorney, by his, the plaintiff's attorney's acts, to believe that the case had not been served in time, and misleading him, the defendant's attorney, to the extent that the defendant's attorney made no suggestions of amendments to the case, and made no objections to the settling and signing of the case, but allowed the case to be settled and signed many days before it could otherwise have been settled and signed. He claims that the plaintiff, through his attorney, committed a fraud upon the defendant, to the defendant's prejudice. He claims that the plaintiff's attorney violated his agreement with the defendant by not informing the defendant's attorney that the case had been served upon the defendant. The plaintiff's attorney, however, claims that if he was guilty of any bad faith in not informing the defendant's attorney of the service of said case upon the defendant, that the plaintiff cannot be held responsible therefor; that if he agreed with the defendant to hand the case-made to the defendant's attorney, and to inform him that service of the same had been made upon the defendant, that he agreed to do the same merely as the agent of the defendant, and not as the agent of the plaintiff; and therefore that if he acted in bad faith, it was the bad faith of the agent

26—26 KAS.

of the defendant, and not the bad faith of the agent of the plaintiff. This may relieve the plaintiff himself from any imputation of misconduct, but we hardly think it places his attorney in an enviable situation. Indeed, in whatever aspect we may view the conduct of the plaintiff's attorney, we hardly think it can be considered as commendable. Such conduct is rare, and very rare among legal gentlemen who take pride in their profession.

1. Conduct of attorney, not commendable.

We have examined the case made and brought to this court, and treating it as valid, we do not think it will require any final judgment to be rendered in favor of the plaintiff, but at most will require only a reversal of the judgment below, and a new trial. We have, therefore, under all the circumstances, concluded to overrule the defendant's motion, and to treat the case brought to this court by the plaintiff as valid.

We shall now proceed to consider the case as brought to this court. The first question raised by the plaintiff in error is with regard to the supposed homestead rights of Charles Ahrendt. It seems from the case now before us that the defendant claimed that a portion of the property in controversy was occupied as a homestead by Charles Ahrendt from a time anterior to the time when the deed was made from Charles Ahrendt to Caroline Schutt, from a time anterior to the time of the levying of the plaintiff's attachment, continuously down to a time subsequent to the time when the property was conveyed to the defendant Sook, and therefore that the plaintiff could not have obtained any interest in the property by virtue of his attachment, or judgment, or sheriff's sale, or sheriff's deed; nor could the said Charles Ahrendt have been guilty of any fraud or wrong-doing as toward his creditors by conveying the property to Caroline Schutt. The question whether Ahrendt did occupy the property as a homestead, as is claimed by the defendant, is a very important question for if he did, the judgment of the court below is undoubtedly correct, and the decision of the whole case in the court below may have turned upon the decision of this one question

It appears from the *ex parte* case now before us, that Ahrendt resided upon the land with Caroline Schutt and her husband during the time above mentioned, but it does not appear that they lived together as one family, or that the Schutts constituted the family, or any part of the family of Ahrendt; and there is no claim made by the defendant that such was the case; on the contrary, it appears that Ahrendt had a family, a wife and children, residing in Illinois, and that none of his family had ever been upon the land, or even in Kansas; and it further appears that there was no intention on the part of Ahrendt that any of them ever should live upon the land, or in Kansas. Under such circumstances, we do not think that Ahrendt had any homestead rights to the
2. Not a home-      property in controversy, within the meaning of our
    stead.           homestead exemption laws. Under our homestead exemption laws, no person can hold property exempt from execution or forced sale unless the property is "occupied as a residence by the family of the owner." (Const., art. 15, § 9; Comp. Laws of 1879, p. 437, § 1.) Ahrendt's family never resided upon the land; they never occupied the same as a residence, as is required by the homestead-exemption laws; and therefore we think Ahrendt never had any homestead interest in the land. We think that it is true that an occupancy of land may be constructive, as well as actual. We think it is also true that it is not necessary that a family shall consist of a husband and wife and children; but it may sometimes consist of persons who do not sustain any such relation to each other. We think it has also been decided that one person may hold property as a homestead where the homestead right has first been obtained within the meaning of the homestead-exemption laws, and then where all the persons constituting the family, except one, have died or abandoned the homestead; but the present case does not come within any of these cases. Ahrendt alone did not constitute a family, and he did not have any family of his own occupying his supposed homestead, either actually or constructively. His

Farlin v. Sook.

family were in Illinois, and he never intended that any of them should ever occupy the property.

It would seem from the *ex parte* case brought to this court, that the court below held a different opinion from the one just expressed by us — that the court below held that Ahrendt might hold the property as a homestead, exempt from forced sale under the homestead-exemption laws, under just such circumstances as those above mentioned. In this we think the court below erred.

The homestead laws apply only to families, and not to single individuals, and apply only where the family occupies the homestead as a residence, and not where the family resides somewhere else. These laws are founded upon the theory that human society is usually and naturally divided into families, and that the general welfare of society is best promoted by providing that each family may have a home, an abiding place, an asylum, secure from financial disaster, and secure from the pursuit of the most vigilant and unrelenting creditor, as well as from the pursuit of every other kind of creditor; and they do not extend their protecting *ægis* to single individuals, or to aggregations of individuals where these aggregations do not constitute families.

The judgment of the court below will be reversed, and cause remanded for a new trial.

All the Justices concurring.