## J. G. FARLIN v. H. S. SOOK.

1. EJECTMENT; *Sheriff's Deed, Title Under; Evidence.* A sheriff's deed of real estate sold upon execution, relates back to the day of sale, and vests the title as of that date; hence in an action of ejectment brought by the purchaser, and commenced after the sale and confirmation, it is no objection to the introduction of the sheriff's deed in evidence that it bears date and was in fact executed subsequently to the commencement of the action.

2. LAND—*Good Faith of Grantee—Bad Faith of Grantor.* One who in good faith and for a valuable and sufficient consideration purchases a tract of land, will be protected in such purchase, although the grantor was in debt, and intended by such sale and conveyance to hinder, delay, and defraud his creditors.

3. ——— This rule obtains, even where a part of the consideration is an agreement to support the grantor in the future.

4. ——— In such a case, the creditors may treat the agreement to support as a mere debt to the grantor, and hold the grantee for the excess of the value of the land over the consideration actually paid and discharged.

5. SUPREME COURT—*Supervision of its Officers, Including Attorneys.* Beyond the mere appellate functions of this court in reviewing the proceedings and correcting the errors of trial courts, is the duty which it owes to the state of supervising the actions of its officers, including therein all who are admitted to practice at its bar. This is not a privilege, but a duty;

26—30 KAS.

and whenever counsel are guilty of ungentlemanly and unprofessional conduct, it is a duty to reprove, and in extreme cases to disbar, and this notwithstanding counsel in such conduct may so keep within the strict letter of general rules of law or practice as to prevent their actions from resulting in injury to their clients.

### *Error from Chase District Court.*

EJECTMENT, brought by *Farlin* against *Sook.* Verdict and judgment for the defendant, at the November Term, 1882. Plaintiff alleges error, and brings the case here. The facts are stated in the opinion.

*Cunningham & McCarty,* for plaintiff in error.

*Wood & Cochran,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action of ejectment, brought by plaintiff in error, plaintiff below. Trial by jury. Verdict and judgment were for defendant, and plaintiff alleges error. The facts are these: On May 3, 1877, one Charles Ahrendt was the owner of the land in controversy. On that day he conveyed to Caroline Schutt, who took possession and placed her deed on record. Afterward, and on June 21, 1877, plaintiff, a creditor of Ahrendt, attached the land as the property of Ahrendt. The attachment proceedings culminated in a judgment against Ahrendt, and a sale of the land to plaintiff. Defendant claims title by virtue of a deed from Caroline Schutt. Defendant's title is therefore perfect, unless avoided by the attachment proceedings against Ahrendt.

As heretofore stated, the verdict and judgment were in favor of the defendant, and the defendant insists that this court cannot inquire into the errors complained of by plaintiff, for the reason that the sheriff's deed upon the sale in the attachment proceedings was not made until after the commencement of this action; hence he claims that plaintiff had at that time no title. We think this objection is not well taken. Prior to the commencement of this action, the sale was made and confirmed; and while the deed offered in evidence bears

date subsequently thereto, yet such deed, as stated by counsel, was made to correct a mistake in a prior deed, and certainly relates back to the time of the sale, and vests title as of that date. (*Jackson v. Ramsey*, 3 Cowen, 75; *Crowley v. Wallace*, 12 Mo. 145; *Winston v. Affaltee*, 49 Mo. 263; *Wallace v. Lawrence*, 1 Wash. C. C. 503.) We think therefore we are compelled to consider the main question presented by counsel for plaintiff. That question arises on these facts: By the answers of the jury to the special questions submitted to them, it appears that the value of the land at the time it was conveyed to Caroline Schutt was $1,000; that the consideration of such conveyance was an indebtedness of said Ahrendt to said Schutt of $800; and an agreement on the part of Caroline Schutt and her husband, or one of them, to support Ahrendt in the future. It also appears that she at the time had no knowledge that Ahrendt was indebted to any other person, and did not take the deed with any idea of helping him to defeat his creditors, but simply for the sake of getting herself a home. Now it is claimed by counsel for plaintiff, that as this conveyance was partially in trust for the benefit of Ahrendt and to secure his future support, it was void as against his creditors. On the other hand, it is insisted by counsel for defendant, that the *bona fides* of Mrs. Schutt in the transaction, coupled with the value actually paid, will uphold the conveyance. This, therefore, is the question presented: Where a conveyance of real estate is made, the larger part of the consideration being the payment of a just debt, and the purchaser acting in good faith, is such sale void as against the creditors of the grantor simply because a small portion of the consideration is an agreement on the part of the grantee or her husband to support the grantor in the future? The answers to the special questions, as well as the instructions of the court, distinctly present this question, and the judgment must be affirmed, unless the mere fact that a part of the consideration was an agreement for the future support of the grantor necessarily vitiates the conveyance as against his creditors, and this notwithstand-

ing that the grantee was acting in good faith, in ignorance of the grantor's indebtedness, and received the conveyance mainly in payment of a debt due to her.

We think the conclusions of the district court are correct; that this is a case of an alleged fraudulent sale, and that participation in the fraud on the part of the grantee, or at least knowledge of the intended fraud of the grantor, must be shown, or the sale will be upheld. This is the general doctrine as to ordinary fraudulent sales as recognized by the decision of this and other courts. (*Diefendorf v. Oliver,* 8 Kas. 365; *Wilson v. Fuller,* 9 Kas. 176; Bump on Fraudulent Conveyances, pages 227 and following, and cases cited in the note on page 229.) In this latter work, on page 59, speaking in general terms of the statutes of frauds and perjuries, the author says:

"It must not, however, be so strained as to make it receive an interpretation which it was not intended to bear. Such a construction, moreover, is not to be made in support of creditors as will make third persons sufferers when they act in good faith;" citing *Cadogan v. Kennett,* 2 Cowper, 402.

In *Fifield v. Gaston,* 12 Iowa, 218, the court says: "A fraudulent purpose on the the part of the grantor is not sufficient. A like intention must be traced to the grantee, and unless shown, the conveyance will be upheld;" and so run the authorities generally. Neither does the fact that Ahrendt by this conveyance paid one creditor instead of another, vitiate the transaction, for a debtor has a right to prefer one creditor to another. (*Kayser v. Heavenrich,* 5 Kas. 338; *Cuendet v. Lahmer,* 16 id. 527; *Avery v. Eastes,* 18 id. 505; *Dodd v. Hills,* 21 id. 707; *Campbell v. Warner,* 22 id. 604.)

It is doubtless true that when the conveyance is entirely without consideration, or when such consideration is entirely some reservation or benefit to the grantor, or when the conveyance is upon some secret trust for the benefit of the grantor, or to one having no personal interest in the conveyance, such as a mere assignee, the knowledge and intent of the grantee are immaterial, and the conveyance may be set aside at the

instance of creditors. But on the other hand, when the grantee is an actual purchaser, pays value and buys the property on the strength of the title vested in the grantor, then if he acts in good faith and without any knowledge of a fraudulent intent on the part of the grantor, he is entitled to protection in his purchase. In Bump on Fraudulent Conveyances, page 228, the author says:

"It is because both law and justice recognize the equitable interest of creditors in the property of the debtor, that a transfer of such property to defeat their demands is declared to be void, and the right of a *bona fide* purchaser for a valuable consideration is protected by the statute, because the equity of such purchaser is superior to that of a mere general creditor, for the obvious reason that the purchaser has not like the creditors trusted to the personal responsibility of the debtor, but has paid the consideration upon the faith of the debtor's actual title to the specific property transferred." (See also *Seymour v. Wilson*, 19 N. Y. 417.)

Now there is nothing inherently wrong in an agreement for future support; nothing which vitiates it as a consideration for a conveyance. It is always a sufficient consideration to sustain a conveyance as between the parties thereto; and when the grantor retains enough property to pay all his debts, creditors have no right to challenge the conveyance on the ground that it is based upon such a consideration. It is only when they are wronged, and to the extent that they are wronged by a conveyance based upon such a consideration, that they have any standing to complain of it. Creditors have equitably a right to insist that the present property of the debtor shall be applied to the payment of his present debts, and only so far as his conveyances tend to defeat this equitable right may they complain. If the entire consideration is an agreement for the future support of the grantor, and he has no other property out of which these debts can be satisfied, they may have the conveyance set aside. So, if the conveyance be partly for value and partly upon the agreement for the grantor's future support, and the grantee knows of the grantor's indebtedness and intent to place the property

beyond the reach of his creditors, and takes the conveyance with the intent to assist such design, the creditors may then also have the conveyance set aside; for if a fraudulent intent exists on the part of the grantee as well as the grantor, the law will not uphold a conveyance, even though full consideration be actually paid, for it is not tolerable that one man should assist in cheating others. But where the grantee is acting in good faith, either seeking to obtain payment of a debt due him, or to purchase the property for his own benefit simply, and the substantial part of the consideration is a debt or other thing of value, then to treat the conveyance as void at the instance of the creditors, simply because a small portion of the consideration is open to challenge as a reservation for the grantor's benefit, would reverse the ordinary rule, and prefer the equity of a creditor to the equity of a *bona fide* purchaser. It is true that the authorities in general terms say that an agreement to support the grantor is not sufficient to uphold a transfer, when he is insolvent; that it is in effect a transfer to the use of the grantor which is always void, and that where part of the consideration is money or other property and part an agreement for future support, the law will not enter into an inquiry as to the respective value of either part, but it will, at the instance of creditors, treat the conveyance as voidable and hold the property liable for their claims. (Bump on Fraudulent Conveyances, page 246, and cases cited in the note.) An examination of these cases discloses the fact that in most of them the entire consideration was the agreement for support, or else the circumstances were such that the grantee took with knowledge of the grantor's indebtedness, and therefore presumably of his intention to place his property beyond the reach of his creditors; so that while very general language is used in many of those cases, yet that language must be interpreted by the facts as presented, and limited to cases presenting similar conditions. If the language in any opinion is to be taken as a decision that from the mere fact that any portion of the consideration is an agreement for future support the conveyance is voidable at the instance of

creditors, although the grantee was ignorant of the grantor's indebtedness, had no thought of defeating creditors, and was in all respects a *bona fide* purchaser, we must dissent from such case.

We conclude, therefore, that the ruling of the district court is right, and that the conveyance is not to be treated as a nullity at the instance of the plaintiff, a creditor of the grantor, and that the judgment must be affirmed. It may be remarked that doubtless a creditor would have a right to treat the agreement for future support as a mere obligation of the grantee, and charge him and perhaps hold the property for the value of such agreement, that value being the difference between the value of the property and the amount of the consideration paid in money or other property. The consideration under such circumstances may be considered as partially paid and partially unpaid, and the unpaid portion as still responsible for the grantor's debts.

It is also insisted by counsel for plaintiff that some of the answers are against the evidence: for instance, that the jury placed the value of the property at $1,000, when the testimony showed that it was not less than $1,200, and also that they placed the amount of the indebtedness from Ahrendt to Schutt at $800, when it was really much less. We think there is some foundation for the criticism of counsel, but an examination of the testimony indicates to us that there is another matter, not covered by the answers to special questions, which makes very strongly in support of the decision, and that is, that Mrs. Schutt seems to have given Ahrendt money for the purchase of the land some time before its purchase, and that he, as the purchaser, was to some extent acting as her agent and buying a home for her. Of course if equitably all the time she had full or partial right to this land, the injustice of subjecting it all to the payment of Ahrendt's debts would be more apparent. Without pursuing this discussion further, we think the judgment is right, and it must be affirmed.

We might close this opinion here, but another matter has

been called to our attention, which calls for notice at our hands This case has been once to this court, and the opinion will be found in 26 Kas. 397. At that time we felt called upon to animadvert upon the conduct of counsel for plaintiff in error. We did so reluctantly, but because under the circumstances we felt it our duty so to do. The learned counsel feels hurt by our criticism, and, in connection with the present presentation of the case, calls our attention again to the matter, and earnestly insists that he was wronged by such criticism. Coupled with his own statement are presented the statements and suggestions of other counsel from that district, some of whom were familiar with the facts as they really existed. The writer of this opinion was not on the bench at the time that case was argued, and his information concerning what then took place is derived solely from the representations of his associates and others. We have carefully considered the suggestions made by counsel and others, coupled with the facts as they then presented themselves to the court, and upon them desire to make these comments. First, we refer to the claim of counsel as now presented; and in order that there shall be no mistake, we quote the language of his statement:

"First. I do not think your honors ought to have investigated the quality of my moral or professional conduct upon a motion to dismiss a petition in error. The attorney for defendant in error said, by his motion, that as a matter of law such unprofessional conduct with which he charged me was sufficient cause for the dismissal of the case of my client. It seemed to me then, as a matter of correct practice, that I was called upon to say no more than, 'Admitting everything you say about me to be true, that is no reason that the petition in error should be dismissed;' and your honors agreed with me."

We must most respectfully but firmly dissent from the ideas presented in this claim. It is true, that this court sits mainly as a court of review and to correct the errors in the proceedings of trial courts; but beyond that, it has a duty to discharge to the people of this state, and to the members of

the bar who practice before it. All gentlemen admitted to practice in this court are officers of the court, and it is not only the *privilege*, but it is also the *duty*, of this court to see that they so conduct themselves as to justify the confidence of the community. We all know that certain general rules of law and practice are established, conformity to which is essential to the due administration of law and to the good order of society, and yet that often parties, keeping themselves within the limits of those rules and thus safe from legal condemnation, take advantage of the ignorance and inexperience of others, and accomplish results which, however justified by considerations of public policy, in the individual instance work injustice and wrong. Indeed, this lies at the foundation of many of the harsh criticisms upon our profession, that its members, while keeping within the letter of the law, violate its spirit and do that which really works injustice and hardship. Now it is unquestionably the duty of this court, as of all other courts, notwithstanding the individual hardship, to enforce all established rules of statute, common law, and practice; but it does not follow from this, that while we uphold that which is done in accordance with those rules, we must either commend or pass unnoticed the conduct of counsel or party, which, kept within the letter of the law, offends the sense of justice, or transgresses the bounds of professional or gentlemanly conduct. It is of course a delicate matter to criticize or condemn the action of client or counsel, but we should be unworthy of the trust reposed in us if at any proper time we failed to express our clear condemnation of any conduct which offends the rules of gentlemanly or professional intercourse. We would not willingly wound, we would not unnecessarily offend; but whenever in any case coming before us there appears any trespass upon the obligations of gentlemanly or professional intercourse, we should be false to our oath and recreant to our duty if we failed unhesitatingly to condemn, or in extreme cases to disbar. Premising this, we may say that from the facts now presented

it seems that the burden of our criticism was provoked by the failure of counsel to recognize this fact and tender full explanation of his conduct. It seems as though then and now, he thought the duty of this court was limited to a discussion of the legal rights of the parties, and the legal effect of the action of counsel. He placed himself then in the position of saying, "I admit the moral taint of my conduct, but it is legally defensible, and therefore it was the duty of this court to uphold the conduct and say nothing as to the moral character." He evidently acted upon this theory, and, presenting no explanation or defense, simply said: "Conceding it all to be true, what difference does it make?" As we have already said, we conceive it to be our duty to go beyond the mere consideration of the legal result, and to criticise and condemn, to commend and approve, according to the moral character of the act. We did so at the time that opinion was filed, and we have no disposition to qualify or limit or withdraw the criticism then placed upon the conduct of counsel as then disclosed. But we take pleasure in saying, that from the representations of fact as now made by the gentleman and other parties, it appears that while not then presented, there were other facts which justify or at least palliate his conduct, which show that he acted not from a mere desire to catch an adversary in a legal trap, but partially because in ignorance of what opposing counsel knew and what he had a right to suppose was known, and partially because of the manner in which his tender of the case-made was received. He was not seeking to take simply a technical advantage over his adversary, or to deprive him of any just rights he might have; but reasonably supposing that his adversary's counsel was fully informed of what had been done, and irritated by the manner in which his tender of the case-made was received, he simply withdrew from the conference, without comment, reply, or information. As all these acts are now presented, they certainly do away with the burden of our criticism and condemnation. He was

under no obligation to disclose that which he had a right to suppose the opposing counsel knew, and which he had never agreed to state to such counsel ; and any gentleman may withdraw from a conversation which is conducted in a disagreeable and offensive manner. We gladly make this explanation, and place it upon the records of this court. We would not willingly do the slightest injustice to any counsel, or leave any stigma upon his professional character. As heretofore said, we think counsel made a grave mistake. When the case was then before us, he tendered no satisfactory denial or explanation of the charge, but simply said, "If it be true, what difference does it make?" While we agreed with him that it did not avoid the case-made, we felt compelled to criticise and condemn his conduct. Now he comes forward with a statement of himself and others, showing facts which explain his conduct and place it in a very different light; and so we place the explanation side by side with the criticism, and close by saying that the conduct, as then charged and unexplained, deserved the criticism then placed ; as now explained by the statement of himself and others, it places the matter in a very different light, and shows that he did not in fact act so as to deserve the criticism placed upon him. With these remarks, we leave the case and close the opinion.

All the Justices concurring.