W. J. ASSENMACHER COMPANY V. IRA K. HOLMES, ADMINISTRATOR, APPELLEE: BRYAN MEMORIAL HOSPITAL, APPELLANT.

FILED JANUARY 7, 1936. No. 29425.

*G. E. Hager*, for appellant.

*W. J. Moss, Melvin Moss, Claude S. Wilson, Roy F. Gilkeson* and *Hymen Rosenberg*, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ.

CARTER, J.

This is a suit to foreclose a real estate mortgage brought by the plaintiff, W. J. Assenmacher Company. The petition alleged the execution of the note and mortgage by Ira K. Holmes and Tracy Holmes, husband and wife, to William H. Holmes, the sale of the same by William H. Holmes to the Bryan Memorial Hospital, and the purchase of the note and mortgage by the plaintiff from the Bryan Memorial Hospital for a valuable consideration, before it became due.

The First National Bank of Fairbury, Nebraska, filed a cross-petition alleging that it had recovered a judgment against William H. Holmes and Ira K. Holmes, as Holmes Brothers, in the sum of $19,582.15; that the Bryan Memorial Hospital and the other defendants had entered into a conspiracy to cheat, wrong and defraud the bank and to hinder and delay the collection of its judgment. The bank further alleged that the execution and delivery of the note and mortgage to William H. Holmes and the subsequent transfer thereof to Bryan Memorial Hospital and W. J. Assenmacher Company were made to further this conspiracy, and prayed for the cancelation of the mortgage and the sale of the land covered thereby to satisfy the bank's judgment.

The Bryan Memorial Hospital filed its answer to the cross-petition of the First National Bank in which it denied all allegations of fraud pleaded by the bank. W. J. Assenmacher Company also answered the cross-petition of the bank, denying that it had procured the note and mortgage by fraud and alleging that it was an innocent purchaser for value. The bank filed a reply to the answer of the Bryan Memorial Hospital, alleging that the transfer of the note and mortgage by William H. Holmes to the Bryan Memorial Hospital was a voluntary conveyance, made to cheat, wrong and defraud the bank. The prayer of the reply was that, if the W. J. Assenmacher Company be found to have been an innocent purchaser of the note and mortgage, the bank recover judgment of and from the Bryan Memorial Hospital for the amount of the value of the note and mortgage transferred to it by William H. Holmes.

The trial court entered a decree of foreclosure on the mortgage and ordered the property sold. The court found against the bank as to its allegations of fraud. The court, however, found that the transfer of the note and mortgage by William H. Holmes to Bryan Memorial Hospital was not an absolute assignment and that William H. Holmes retained a beneficial interest therein, that it was in fraud of the rights of creditors of William H. Holmes, although

binding as to plaintiff, it being an innocent purchaser for value. Upon this finding the trial court entered judgment against Bryan Memorial Hospital and in favor of Ira K. Holmes, administrator of the estate of William H. Holmes, for the sum of $5,917.77. From the entry of this money judgment only Bryan Memorial Hospital brings the case to this court on appeal.

The evidence shows that Ira K. Holmes and William H. Holmes had received title to certain real estate in Jefferson county as tenants in common by will from their mother. They subsequently decided to divide the land so that each would own his share in fee simple. In making the division, Ira K. Holmes received the more valuable lands and therefore agreed to pay William H. Holmes the sum of $5,000 as the difference in value of the two tracts. Ira K. Holmes, not having the cash, executed a note to William H. Holmes for the amount. When the note became due it was not paid. A new note, including some past-due interest, was then given in the sum of $5,350, and a mortgage executed to secure the same, which note and mortgage are the basis of the suit at bar.

The evidence further shows that William H. Holmes had made two subscriptions of $2,500 each to the Bryan Memorial Hospital, payable at his death, for the purpose of providing rooms in the hospital as memorials to his father and mother. Although these subscriptions were not due, William H. Holmes desired to pay them off in his lifetime, and, after negotiating with the Bryan Memorial Hospital, he assigned the note and mortgage given to him by Ira K. Holmes and wife to the hospital without recourse as full payment of the subscription notes he had executed to the hospital. As a consideration for his paying the subscription notes before they were due, Bryan Memorial Hospital executed a contract with William H. Holmes whereby it agreed, among other things, to pay to William H. Holmes, during his lifetime, an amount equal to the interest payments actually paid by Ira K. Holmes, the maker of the note and mortgage; also, if Bryan Memorial Hospital sold

or transferred the note and mortgage during the lifetime of William H. Holmes, the hospital agreed to pay said Holmes, in lieu of the interest payments, an annuity equal to 6 per cent. of the face of the note and mortgage, payable semiannually.

The evidence shows that the hospital assigned the note and mortgage to plaintiff as a part of the contract price for constructing a hospital building, and the hospital thereupon became obligated to pay to William H. Holmes the annuity equal to 6 per cent. of the face of the note during the balance of his life. Upon this statement of the evidence, the trial court held that the assignment of the note and mortgage by William H. Holmes to Bryan Memorial Hospital was not absolute; that William H. Holmes retained a beneficial interest therein; that the assignment was in fraud of the rights of creditors of William H. Holmes, and entered judgment against Bryan Memorial Hospital for $5,917.77.

The payment of the subscription notes given by William H. Holmes to Bryan Memorial Hospital is a valid consideration for the assignment. This point is well discussed in *Seymour v. Wilson*, 19 N. Y. 417, as follows: "When, however, the transfer, instead of being to a stranger, is to a creditor of the vendor, a different principle applies. It is not necessary, in such a case, that the vendee, in order to protect himself from a claim by the other creditors, should show any new consideration paid; for the obvious reason that his equity, at the time of the transfer, was the same as theirs, and he is entitled to the benefit of the universal rule, that where the equities are equal the legal title must prevail. Such a transaction could amount to nothing more than the voluntary preference of one creditor over another; and supposing the creditor receiving the transfer to have full knowledge of the object of his debtor, the title which he acquires would not be thereby affected. There is no doubt that the debt paid or secured by the transfer must, in such a case, be regarded as a 'valuable consideration,' within the section which saves the rights of *bona fide* purchasers; so that if the creditor acts in good faith, and for

the mere purpose of obtaining satisfaction of his own debt in accepting the transfer, he will acquire a valid title. There being no equity prior to his own to be overcome, the necessity which calls for proof of a new consideration in other cases does not exist."

The theory of the trial court was, however, that the annuity contract, executed as a part of the same transaction, amounted to a reservation of a beneficial interest. A like situation arose in the case of *Farlin v. Sook,* 30 Kan. 401, 1 Pac. 123, wherein the court, after stating the facts, said:

"This, therefore, is the question presented: Where a conveyance of real estate is made, the larger part of the consideration being the payment of a just debt, and the purchaser acting in good faith, is such sale void as against the creditors of the grantor simply because a small portion of the consideration is an agreement on the part of the grantee or her husband to support the grantor in the future? The answers to the special questions, as well as the instructions of the court, distinctly present this question, and the judgment must be affirmed, unless the mere fact that a part of the consideration was an agreement for the future support of the grantor necessarily vitiates the conveyance as against his creditors, and this notwithstanding that the grantee was acting in good faith, in ignorance of the grantor's indebtedness, and received the conveyance mainly in payment of a debt due to her.

"We think the conclusions of the district court are correct; that this is a case of an alleged fraudulent sale, and that participation in the fraud on the part of the grantee, or at least knowledge of the intended fraud of the grantor, must be shown, or the sale will be upheld. * * * But where the grantee is acting in good faith, either seeking to obtain payment of a debt due him, or to purchase the property for his own benefit simply, and the substantial part of the consideration is a debt or other thing of value, then to treat the conveyance as void at the instance of the creditors, simply because a small portion of the consideration is open

to challenge as a reservation for the grantor's benefit, would reverse the ordinary rule, and prefer the equity of a creditor to the equity of a *bona fide* purchaser. * * * It may be remarked that doubtless a creditor would have a right to treat the agreement for future support as a mere obligation of the grantee, and charge him and perhaps hold the property for the value of such agreement, that value being the difference between the value of the property and the amount of the consideration paid in money or other property. The consideration under such circumstances may be considered as partially paid and partially unpaid, and the unpaid portion as still responsible for the grantor's debts."

While the unpaid annuity payments are undoubtedly subject to the payment of the debts of William H. Holmes, that question is not before this court, it being wholly outside the issues disclosed by the pleadings. We are convinced that the trial court erred in holding that William H. Holmes retained a beneficial interest in the note and mortgage in question. They were assigned absolutely and without recourse. The consideration was the payment of the two subscription notes of $2,500 each that were not due and the execution of the annuity contract hereinbefore mentioned. The subscription notes not being due until the death of William H. Holmes, it is natural to suppose that, upon payment being made during the lifetime of Holmes, he would be entitled to receive an annuity equivalent to the value of the use of the principal amount thereof for the balance of his life. In addition to this, the terms of the agreement provided for the contingency of a sale of the note and mortgage by the hospital, an indication of an intent to convey a complete title. There is no evidence to support a finding of bad faith or knowledge of an intent to defraud on the part of Bryan Memorial Hospital. We conclude, therefore, that the assignment of William H. Holmes to Bryan Memorial Hospital was full and complete and that the trial court erred in holding to the contrary.

The action of the trial court in entering judgment in favor of Ira K. Holmes, administrator of the estate of

William H. Holmes, deceased, and against Bryan Memorial Hospital is reversed and the action dismissed as to the Bryan Memorial Hospital.

REVERSED AND DISMISSED.