No. 21,121.

THE GATE CITY NATIONAL BANK, *Appellant*, v. M. L. GREENE and J. Q. GREENE, *Defendants* (C. R. HEPLER, Interpleader, *Appellee*).

SYLLABUS BY THE COURT.

1. ATTACHMENT—*Bill of Sale—Securing Attorney's Fees—Transaction Not Fraudulent as to Creditors.* A debtor while solvent employed attorneys to defend her sons in criminal actions pending against them. She gave her note to one of the attorneys for their fees and for expenses incident to the defense of the actions, and secured the note by a mortgage on real estate. The mortgage was not sufficient security for the note, and she procured her daughter and her daughter's husband to assume payment of the attorney fees. To the daughter she assigned an interest in an estate, and to her daughter's husband she gave a bill of sale of personal property. The entire transaction was conducted in good faith, and not for the purpose of hindering, delaying, or defrauding creditors. Soon afterward the debtor was adjudged to be bankrupt. In an action by a creditor the personal property covered by the bill of sale was attached. *Held*, the instrument was not, in law, fraudulent as to creditors.

2. SAME—*Bill of Sale—Security for Future Advances—Not Fraudulent.* Besides the consideration stated, the bill of sale was given for indefinite future outlays of money for the benefit of the debtor and for her support until her finances mended. *Held*, the inclusion of future advances did not, of necessity, render the bill of sale fraudulent.

3. SAME—*Note and Mortgage—Securing Attorney's Fees—Good Faith Required.* The need for the employment of the attorneys was instant, and they were employed to represent defendants in specified criminal actions pending at the time. *Held*, the attorneys could take and hold security for their fees, given in good faith and not as a ruse to hinder, delay, or defraud.

4. SAME—*Finding Sustained by Evidence.* The proceedings examined, and held, the general finding of the court on the issues of solvency, fraudulent intent, and others, was sustained by the evidence.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed January 12, 1918. Affirmed.

*J. L. Shelden*, of Ottawa, *M. L. Friedman*, and *I. J. Ringolsky*, both of Kansas City, Mo., for the appellant.

*Wilbur S. Jenks*, of Ottawa, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on a promissory note for $10,000, given by the defendant, Mrs. M. L. Greene, whose liability was not contested. An attachment was levied on certain chattels as the property of the defendant. Dr. C. R. Hepler intervened, claiming the chattels under a bill of sale from the defendant. The question was whether or not the bill of sale was made to defraud creditors. The court sustained the bill of sale, and the plaintiff appeals.

Mrs. Greene incurred liability to the plaintiff to assist two sons, who were engaged in the banking business in Pueblo, Colo. To protect her they gave her title, or the means of procuring title, to various tracts of land in Colorado, New Mexico and Michigan. At that time the defendant owned a widow's portion of a farm in Franklin county, Kansas, a one-half interest in some stock and implements on the farm, and a one-sixth interest in an estate in Illinois. The sons failed, and a number of indictments were returned against them for violations of the federal banking laws. Some difficulty was experienced in procuring bonds and in procuring desired counsel. The mother came to the relief of her sons, and called to her assistance the interpleader, Dr. Hepler, who was her son-in-law. Dr. Hepler is a physician who formerly resided at Manhattan, and held a position in the state hospital at Osawatomie. He had gone to Colorado to look after a sick brother, and became connected with the management and disposition of real estate in which the Greenes were interested. Two attorneys were employed to defend in the district court the criminal actions pending against the sons. The fees of the attorneys were $5,000 and $2,000, respectively, and they required $1,000 for expense money incident to the litigation. Mrs. Greene signed a note for $8,000 for these fees and expenses, and secured it by mortgage on the Franklin county farm. Doctor and Mrs. Hepler, at Mrs. Greene's request, signed obligations to the attorneys for their fees. Mrs. Greene gave Dr. Hepler a bill of sale of her interest in the stock and implements on the farm, and she gave Mrs. Hepler an assignment of her interest in the Illinois estate. The consideration of the bill of

sale and assignment was to reimburse Dr. Hepler for out-lays of money in the crisis in the Greene affairs, to protect Dr. and Mrs. Hepler on their obligations to pay attorney fees, and to help support Mrs. Greene until she should be able to take care of herself. Previous to this transaction Mrs. Greene had transferred to Dr. Hepler some ranch proper-ties in Colorado, not shown by the evidence to be of any value above the mortgages on them. Through a trade of some of the lands received from her sons, Mrs. Greene became the owner of an apartment house in Pueblo, Colo., known as Marlborough Terrace, which was subject to a first mortgage of $3,500. A note secured by a second mortgage for $6,000 on the property came into Mrs. Greene's hands, which she transferred to the plaintiff as additional security for her obligation to the plain-tiff. The transaction which included the mortgage to the at-torneys, the bill of sale, and the assignment of the estate in Illinois, covered the time from January 27 to February 1, 1914. In September of the same year Mrs. Greene was adjudged bankrupt.

The district court made a general finding in favor of the in-terpleader. This finding includes, of course, findings on all the material issues. The plaintiff contends that the bill of sale was given with intent to defraud, that Mrs. Greene was insolvent at the time she made the bill of sale, and that the considera-tion for the bill of sale was of a character to render it fraudu-lent.

The finding of the district court that Mrs. Greene enter-tained no actual intention to hinder, delay or defraud her creditors, is approved. The conclusion to be drawn from the evidence is that the security which the sons gave Mrs. Greene when she executed for their benefit the $10,000 note sued on was chiefly, if not entirely, trading property of speculative value. There is no evidence that she possessed the necessary skill and ability to handle such property successfully. Marl-borough Terrace was practically all she realized from it, of any value. Concerning the tracts of land turned over to Dr. Hepler before the transaction of January 27, 1914, she said: "I am an old woman, and I wanted to get these things off my hands." When her sons were indicted and incarcerated she

undertook to do what any American mother would have done, and she was obliged to ask assistance. She said:

"I made the bill of sale to Dr. Hepler on the 27th day of January because he had signed obligations for me, and I was alone in the world and I had these cases of the boys to look after, my husband is dead, and I had no one when my boys were in trouble but Dr. Hepler and I appealed to him, and I had to compensate him in some way, and I gave him a bill of sale to compensate him for going on my obligations.

"Q. What obligations do you refer to? A. I refer to attorneys' fees and expenses of this trial pending against my boys."

Besides this, she said she had to live, and that Dr. Hepler could not go on her obligations and protect her without some compensation. The assignment of her interest in the estate in Illinois was made to her daughter on the same consideration. She believed the plaintiff was amply secured, and there is nothing to indicate that she had any intention whatever of wronging either of her other creditors, a bank in Ottawa and a Mr. Wilson, of Illinois. There is evidence that all parties to the transaction of January, 1914, believed Mrs. Greene was solvent. The plaintiff was the only creditor that had been preferred. Other creditors had not asked for security, and the plaintiff's president had expressed satisfaction with his security when Mrs. Greene assigned the mortgage for $6,000 on Marlborough Terrace. The plaintiff does not strongly impute evil-mindedness to Mrs. Greene in coping with her difficulties, and the real question in the case is whether or not the bill of sale was fraudulent in law.

The finding of the district court that Mrs. Greene was solvent when the bill of sale was made is approved.

Her assets were:

| | |
|---|---:|
| Franklin county farm (above mortgage) | $5,530 |
| Estate in Illinois | 3,000 |
| Property covered by bill of sale | 1,368 |
| Marlborough Terrace (above first mortgage) | 6,000 |
| | $15,898 |

Her liabilities were:

| | | |
|---|---:|---:|
| To plaintiff | $10,000 | |
| To Bank of Ottawa | 1,880 | |
| To Mr. Wilson | 1,000 | 12,880 |
| | | $3,018 |

The court has little time to discuss evidence, and little space in the Kansas reports for the publication of discussions of

evidence. It may be remarked, however, that the value assigned to the farm is derived from oral testimony on which presumably the district court relied. The value assigned to Marlborough Terrace is based on the testimony of Mrs. Greene, as to the character of the property, its location and surroundings, and its present state of repair and rental value; the testimony of B. J. Parker, who was agent for the property for eight years, during which time it produced a revenue of $100 per month, or twelve per cent per annum on $10,000; and the testimony of O. G. Smith, who examined the property for the purpose of making a loan on it about the time the bill of sale was given. The evidence on which the plaintiff lays great stress—the value of the $6,000 mortgage—is of slight importance in the presence of evidence of the value of the real estate. Second mortgages on real estate and real estate itself are very different things on the market. The distinction is made clear in the testimony of Smith. One of the plaintiff's witnesses was so pessimistic that he testified there was hardly any market value of property in Pueblo. The plaintiff's other witness, while testifying that the second mortgage of $6,000 had no particular value, said that the real estate had an actual cash market value of $7,000—double the amount of the first mortgage. An analysis of the testimony of Parker, contained in the plaintiff's reply brief, does not fairly represent him.

The finding of the district court that the bill of sale was not voluntary, but was based on a valuable consideration, is approved. Whether providently or improvidently, Mrs. Greene became obligated to the attorneys whom she employed, on a note and mortgage, and liability on this obligation cannot be gainsaid. While the assistance which she rendered her sons was voluntary, her obligation to the attorneys was not voluntary, because it was based on a valuable consideration, the adequacy of which is not in dispute. It is said, however, that the law will regard the note and mortgage as fraudulent, because not given for a present consideration. Cases are cited in which transfers of property made in consideration of the rendition of future services were condemned. It is not necessary to review them. In this instance the employment was not a general employment to render whatever legal services might be required, in whatever litigation might arise in the

future, as in the case of *Shellabarger v. Mottin,* 47 Kan. 451, 454, 28 Pac. 199, or to render such services as the client and his relatives might need within the next two years, as in the case of *National Bank v. Croco,* 46 Kan. 629, 26 Pac. 942. The employment was to defend specific criminal actions pending at the time in a specific court. The need for the employment was instant, and for all the purposes of the law the services were due at once. The employer was not insolvent. She was not prohibited from making new engagements, and the attorneys simply became Mrs. Greene's creditors. They became creditors of equal rank with the plaintiff, and could take and hold security for their claim, if given in good faith and not as a ruse to hinder, delay, or defraud other creditors.

The mortgage to the attorneys was not sufficient to secure payment of the note. Sureties were required. Dr. and Mrs. Hepler assumed $7,000 of the amount, and so became bound to the attorneys by an obligation, subject to no defense disclosed by this record. To compensate them the bill of sale and assignment were given. The consideration was a valuable one, which arose at the time of the transaction, and consequently the instruments were not voluntary, under any rational interpretation of the statute of frauds. (Gen. Stat. 1915, § 4885.)

In the case of *Smith v. Rankin,* 45 Kan. 176, 25 Pac. 586, a principal transferred property to his surety. The surety received the property not simply as indemnity, but as consideration for his promise, made at the time of the transfer, to pay the principal's debt. The transfer was upheld when assailed as fraudulent by attaching creditors.

It is said the fact that the bill of sale was given in part for future advances rendered it a hindrance to creditors and a fraud on their rights. The evidence does not establish any definite sum of money which Dr. Hepler had advanced on Mrs. Greene's account before the bill of sale was executed. Afterwards he said he advanced from $500 to $700. Treating the bill of sale as intended to cover future advances by way of expenses and by way of Mrs. Greene's support, it was not necessarily fraudulent. Such a transaction is open to explanation, and if the purpose were not to cover up property with a pretended claim, in order to hinder, delay, or defraud creditors, it will be sustained to the extent that it was supported by

an existing consideration. (*Clement v. Hartzell,* 57 Kan. 482, 46 Pac. 961; *Farlin v. Sook,* 30 Kan. 401, 1 Pac. 123.) The security was not so excessive as to cast suspicion on the transaction. (*Clement v. Hartzell,* supra.)

There was testimony that the bill of sale and the assignment to Mrs. Hepler were to be considered as absolute transfers, and not merely as transfers by way of security. The fact is unimportant. For the plaintiff's benefit, it may be conceded that under the circumstances the law will regard the transfers as for security only. The result is the same.

It is not necessary to extend this opinion further. Absence of intent to defraud, solvency, and valuable consideration fairly adequate, are the determining facts of the case. The evidence sustains the finding of the district court with reference to these facts, and its judgment is affirmed.