No. 28,004.

CORA SEALS, *Appellant,* v. N. D. SNOW and MARTIN S. SNOW, Revived in the name of N. D. SNOW, as Administrator, etc., *Appellees.*

(267 Pac. 1105.)

Opinion filed June 9, 1928.

*William A. Smith,* of Topeka, and *Harry W. Fisher,* of Fort Scott, for the appellant.

*John A. Hall,* of Pleasanton, for the appellees.

The opinion of the court was delivered by

Burch, J.: The action was one by a judgment creditor of Martin S. Snow, now deceased, to set aside a transfer to his brother, N. D. Snow, of all of Martin S. Snow's real and personal property, and to subject the property to payment of the judgment. The court set aside the transfer, but held certain appropriations of the property to the use and benefit of Martin S. Snow by N. D. Snow were valid, and rendered judgment fully and finally determining the rights of all claimants. Plaintiff appeals.

. On March 31, 1925, Martin S. Snow killed Arthur Seals. On the same day Snow was arrested on the charge of murder in the first degree, and on April 3, a self-constituted committee made a demand on behalf of the Seals family for damages for the killing of Seals. Martin S. Snow was suffering from physical and mental disabilities which rendered him incapable of coping with the crisis in his affairs, and on April 3 he transferred all his property to his brother, N. D. Snow, to be handled and used for his benefit. Among other things, N. D. Snow contracted to employ counsel to defend Martin S. Snow in the criminal prosecution, to pay the expenses incident to the prosecution, and to defend Snow in the civil suit for damages which was imminent and which was filed the next day. The deed of real estate and the contract transferring the personal property and expressing the obligation of N. D. Snow to support and to provide for the defense of Martin S. Snow, were filed for record on April 6. Mr. John A. Hall, of Pleasanton, was employed to defend Martin S. Snow in the criminal case, under a contract for a fee of $8,000 and expense money up to the sum of $3,000. N. D. Snow executed a mortgage on the real estate to Hall to secure payment of the fee, and Hall was employed to defend the civil action. The mortgage was not recorded; and it may as well be said here that it was of no consequence to Cora Seals whether the mortgage was recorded or withheld from record. Martin S. Snow was convicted of murder in the first degree, and judgment was rendered against him in the civil action, in favor of Cora Seals, for $10,000. Execution on the judg-

ment was returned unsatisfied, and on June 29, 1926, the present suit was instituted against Martin S. Snow and N. D. Snow.

The petition alleged the transfers of real and personal property were made pursuant to a conspiracy between Martin S. Snow and N. D. Snow to defraud plaintiff, and prayed that the transfers be declared void and of no effect. The petition further prayed judgment against defendants for the amount of her judgment, $10,000, for an attorney fee of $2,500, and for expense money, $13,000 in all; that the judgment be decreed to be a lien on the real estate, and that the real estate be sold to satisfy the judgment.

The answer of the defendants denied fraud, and exhibited a full accounting for the money and property, real and personal, of Martin S. Snow. The contracts with Hall, and the note and mortgage given as security for his fee in the criminal case, were pleaded, and copies were attached to the answer. The items of Hall's expense account were pleaded, and disclosed a balance due him for money paid out in excess of what he had received in the sum of $258.04. N. D. Snow paid out money for the expenses of Martin S. Snow and for his support amounting to $672.21, an itemized account of which was attached to the answer. The answer alleged that Martin S. Snow was indebted to his sister, Lena Snow, with whom he lived, for support and care, and in June, 1925, N. D. Snow gave Lena Snow a mortgage on the real estate to secure the indebtedness. A copy of the mortgage was attached to the answer. The result was that by virtue of his contract with Martin S. Snow, N. D. Snow paid and obligated himself to pay, out of the money and property he received under the contract, the following sums:

| | |
|---|---:|
| Attorney fee to John A. Hall in criminal case | $8,000.00 |
| Attorney fee to John A. Hall in civil case | 1,000.00 |
| Expenses to John A. Hall | 2,658.54 |
| Payments made by N. D. Snow | 672.61 |
| To Lena Snow, for care, support, maintenance, and nursing of Martin Snow | 2,139.00 |
| Total | $14,269.65 |

N. D. Snow also claimed compensation for time spent in caring for Martin S. Snow and in looking after his defense, an itemized account of which was attached to the answer. The prayer of the answer was that plaintiff take nothing, and that N. D. Snow's title be quieted in him, subject to the liens which had been pleaded in the answer.

The reply denied indebtedness of Martin S. Snow to N. D. Snow and Lena Snow, and alleged the claims presented on behalf of N. D. Snow and Lena Snow were fictitious, and were made to defraud plaintiff and to hinder and delay her in the collection of the amount of her judgment. The reply alleged that Hall had full knowledge of the facts relating to the liability of Martin S. Snow to plaintiff as the result of the homicide, and was aware of the intent and purpose of Martin S. Snow, N. D. Snow and Lena Snow to defraud plaintiff; and alleged Hall had no interest in the land superior to plaintiff's claim upon it.

The court returned, among others, the following findings of fact:

"The personal property conveyed by Martin S. Snow to N. D. Snow on April 3, 1925, consisted of $1,397.37 cash in the bank; United States treasury certificates for $600, which were cashed for $522; and other personal property which was sold for the sum of $266; the total proceeds amounting to $2,185.37.

"The 330 acres of land conveyed to N. D. Snow by Martin S. Snow on April 3, 1925, was, at the time of that conveyance, reasonably worth from $35 to $40 per acre, or of a total value of approximately $12,000.

"Martin S. Snow had no debts or liabilities on April 3, 1925, other than his liability for the killing of Arthur Seals, and his liability to John A. Hall for his defense of that charge.

"The conveyance of all the real estate and personal property of Martin S. Snow to N. D. Snow on April 3, 1925, was made for the purpose and with the intent, on the part of Martin S. Snow and N. D. Snow, to hinder, delay and defraud the creditors of Martin S. Snow, and particularly to evade the payment of any judgment that might be recovered against Martin S. Snow for the killing of Arthur Seals.

"The note and mortgage executed and delivered by N. D. Snow to Lena Snow on July 20, 1925, for $2,139, was made with the consent and approval of Martin S. Snow, and was made with the intent and for the purpose, on the part of Martin S. Snow, N. D. Snow, and Lena Snow, to hinder, delay and defraud the creditors of Martin S. Snow, and particularly to evade the payment of any judgment that might be recovered against Martin S. Snow for the killing of Arthur Seals.

"The note and mortgage from N. D. Snow to Lena Snow for $2,139 was executed and delivered without consideration and was wholly voluntary.

"From July, 1921, to April 3, 1925, Martin S. Snow and N. D. Snow were living together as a part of the same family, in the home of Lena Snow, and there was no express agreement between Martin S. Snow and N. D. Snow that N. D. Snow should receive compensation for any services rendered Martin S. Snow.

"N. D. Snow has paid out in cash, from his own funds, for the benefit of Martin S. Snow, the sum of $737.61.

"Martin S. Snow and N. D. Snow are brothers, and were living together in the same family, except during the time that Martin S. Snow was temporarily at the state hospital of Osawatomie, and there was no express agree-

ment between them that N. D. Snow should be paid for any services rendered to Martin S. Snow.

"At the time of the conveyance of all the real estate and personal property of Martin S. Snow to N. D. Snow, on April 3, 1925, the said N. D. Snow, with the consent and approval of Martin S. Snow, entered into a written contract with John A. Hall, an attorney at law, of Pleasanton, Kan., to defend Martin S. Snow in the case then pending against him, in which he was charged with the murder of Arthur Seals.

"Martin S. Snow consented and agreed with N. D. Snow that the amount of John A. Hall's attorney fee for the defense of Martin S. Snow on the murder charge be fixed at $8,000, and the necessary expenses up to the amount of $3,000, and that such fee and expenses be paid from the property conveyed by Martin S. Snow to N. D. Snow.

"John A. Hall has paid out in expenses in the defense of Martin S. Snow the sum of $2,458.04, and he has been advanced for expenses by N. D. Snow, from the personal property conveyed to him by Martin S. Snow, the sum of $2,200, leaving a balance due John A. Hall on expenses of $258.04. This expense account was all incurred in good faith and in an honest effort to do all that could be done in the defense of his client.

"Martin S. Snow consented and agreed with N. D. Snow that John A. Hall should be paid a fair and reasonable fee for his services in defending Martin Snow in the civil action for damages for the killing of Arthur Seals, and that such fee should be paid from the property conveyed by Martin S. Snow to N. D. Snow.

"A fair and reasonable attorney fee for the services rendered by John A. Hall in the civil action against Martin S. Snow for the killing of Arthur Seals is $1,000.

"The employment of counsel provided for in plaintiff's exhibit F, the contract between Martin S. Snow and N. D. Snow, was not a general employment for future services of an uncertain nature, but the parties had in mind only the criminal charge then pending against Martin S. Snow and the civil action for damages against Martin S. Snow for the killing of Arthur Seals, which all of the said parties had reason to believe would be filed, and which was in fact filed the next day.

"A fair and reasonable attorney's fee for the services rendered by John A. Hall in the defense of Martin S. Snow in the criminal case is $4,000, and the fee of $8,000 agreed upon was excessive to the amount of $4,000, and therefore is constructively fraudulent to that amount.

"There was no actual fraud in fixing the amount of John A. Hall's fee for the defense of Martin S. Snow in the criminal action at $8,000 and expenses. John A. Hall knew, at the time he named his fee, that the case would be a very difficult one to defend, and in good faith valued his services at $8,000, and in good faith estimated the expenses in the neighborhood of $3,000. Martin S. Snow and N. D. Snow had known Mr. Hall about all of his life, and evidently had a high regard for Mr. Hall's legal ability. They made the best bargain they could make, under the tension of the circumstances, for the lawyer of their choice, and in good faith agreed to pay the amount named by Mr. Hall as his fee."

The court returned, among others, the following conclusions of law:

"John A. Hall is entitled to a first lien upon the real estate described in finding No. 3, as follows: $4,000 with six per cent interest from April 3, 1925, to this date, amounting to $4,545.33; fee in the civil action against Martin S. Snow, $1,000; balance of expenses, $258.04; total, $5,806.70.

"The defendants should pay the costs of this proceeding.

"All of the real estate described in finding No. 3 should be sold, and the proceeds applied as follows: First, in the payment of the costs of this proceeding and the taxes upon the said land; second, in satisfaction of the lien of John A. Hall, in the sum of $5,803.37; third, the balance to be applied upon the judgment of Cora Seals against Martin S. Snow."

Judgment was rendered accordingly.

As indicated, Hall was not named in the petition as a party defendant, and plaintiff's chief grievance is that the case was tried in all respects as if he were a party.

Plaintiff sought to subject the land to payment of her judgment and, as a means to that end, to avoid the conveyance to N. D. Snow. The primary question was whether the land was available as a source of satisfaction of the judgment. The removal of an obstacle to appropriation was a subsidiary matter. The answer of Martin S. Snow and N. D. Snow raised the question whether, because of pleaded facts, the land ought not to be appropriated first to satisfaction of obligations having priority over plaintiff's claim. In equity, the land was regarded as a sequestered fund, and the extent to which plaintiff might participate in it depended on judicial determination of the question raised by the answer. The court having come into possession of the controversy, it was authorized, under well-settled principles of equity practice, to make an end of it by finally adjudicating the rights of all claimants.

N. D. Snow, who had nominal possession of the fund, and Martin S. Snow, who was interested in what became of it, proposed Hall's claim on the fund. Hall was their attorney. The answer proposing Hall's claim was signed by Hall. Hall not only participated in the litigation, but conducted the case, and was the chief witness by whose testimony validity of his claim was established. To the extent of his claim, Hall was the real party in interest, and any judgment rendered in the action in favor of plaintiff would be conclusive upon him, although he was not a formal party. The general principle that persons who are parties in fact are bound, although not parties of record (*Crane v. Cameron,* 71 Kan. 880, 881, 87 Pac.

466; *Rullman v. Rullman,* 81 Kan. 521, 525, 106 Pac. 52), applies to attorneys the same as to other persons. (1 Freeman on Judgments, 5th ed., § 434, p. 948.) The court had no discretion with respect to the nature of the issues or Hall's relation to the case, and at the conclusion of the trial properly ignored informality, and rendered judgment according to the rights of those who were litigants in fact.

Plaintiff contends the only issue in the case was whether Martin Snow, as grantor, made the conveyance to N. D. Snow, as grantee, to defeat plaintiff as a creditor. She overlooks the answer to the petition. Plaintiff also contends the good faith of Hall, and whether he was a *bona fide* holder of his mortgage, were not presented by the pleadings. She overlooks the reply to the answer. Plaintiff further contends she had no opportunity to present any evidence she may have had in reference to Hall's interest and intent. In opposition to an answer disclosing Hall's interest, plaintiff charged him with notice if not participation in fraud of the Snows, and pleaded broadly he had no interest in the land superior to plaintiff's interest. Hall's interest and intent were fully presented on his side of the case. Plaintiff did contest the amount of his fee in the criminal case, and if she had anything else to offer, the court was in session hearing the case.

Plaintiff complains that the court regarded the case as similar to the case of *Bank v. Greene,* 102 Kan. 202, 170 Pac. 391. The two cases were strikingly alike. In the Greene case, Mrs. Greene needed attorneys, not for herself, but for her sons. In this case, Martin S. Snow needed an attorney. Mrs. Greene induced Doctor Helper to assume obligations to the attorneys to the extent of $7,000. N. D. Snow signed an obligation to Hall as attorney for Martin S. Snow of $8,000, and assumed other obligations. To secure Doctor Helper, Mrs. Greene gave him a bill of sale of personal property. Martin S. Snow conveyed land to N. D. Snow so he could hire Hall. In the Greene case, a creditor attached the chattels as the property of Mrs. Greene in order to subject them to payment of a debt of Mrs. Greene which was not contested. In this case, plaintiff brought a suit in equity to subject the land to satisfaction of a debt of Martin S. Snow which was not contested. In the Greene case, the ground of the attachment was that the bill of sale of personal property to Doctor Helper was fraudulent. In this case, the charge is the conveyance to

N. D. Snow was fraudulent. In her brief plaintiff makes the following remarkable statement: "In the Greene case fraud was not charged." The opinion of this court in the Green case states the issue as follows: "The question was whether or not the bill of sale was made to defraud creditors." (p. 203.) The issue was tried, and the court sustained the bill of sale. The bank appealed, and the contention in this court still was that the bill of sale was fraudulent:

"The plaintiff contends that the bill of sale was given with intent to defraud; that Mrs. Greene was insolvent at the time she made the bill of sale, and that the consideration for the bill of sale was of a character to render it fraudulent." (p. 204.)

In this court, however, fraud in fact was not greatly stressed, and the principal question on appeal was whether the bill of sale was fraudulent in law. . The result is, the district court entered on the trial of this case confronted by issues essentially the same as those which the district court was called on to investigate in the Greene case. That plaintiff misconceived . the decision in *Bank v. Greene*, and that the district court did not, is revealed by the proceedings at the trial.

Plaintiff quotes the following from the second Green case in which a mortgage for $8,000, to cover an attorney fee of $7,000 and attorney expenses of $1,000, was contested on the ground of fraud:

"The difficulty with the bank's case is that Mrs. Greene was solvent, and the contracting parties acted without fraud, actual or legal, upon unimpeachable consideration. Every argument advanced by the bank either ignores, or assumes to be untrue, one or more of these facts, and it is not necessary to extend this opinion further, except to say that the findings of fact were sustained by sufficient evidence, and the conclusion of law followed as a matter of course." (*Bank v. Greene*, 105 Kan. 303, 304, 182 Pac. 404.)

That was said of the result of the trial in the district court, and may be said of the result in the trial in this case. In *Bank v. Greene*, Mrs. Greene had assets in excess of liabilities in the sum of $3,018. In good faith and on unimpeachable consideration she incurred an obligation to attorneys in the sum of $8,000. In this case, Martin S. Snow rested under an unliquidated tort liability to plaintiff, his only creditor, which could not exceed $10,000. He had assets in excess of that sum amounting to $4,185. In good faith and on unimpeachable consideration, an attorney was employed for a fee of $8,000, and expenses not to exceed $3,000, in one case, and for a reasonable fee in another case. In the first Greene case the opinion reads:

"The need for the employment was instant, and for all the purposes of the law the services were due at once. The employer was not insolvent. She was not prohibited from making new engagements, and the attorneys simply became Mrs. Greene's creditors. They became creditors of equal rank with the plaintiff, and could take and hold security for their claim, if given in good faith and not as a ruse to hinder, delay, or defraud other creditors." (*Bank v. Greene*, 102 Kan. 202, 207, 170 Pac. 391.)

The court held the deed of real estate and the contract between Martin S. Snow and N. D. Snow, so far as it transferred personal property, were void for fraud in fact. Plaintiff contends a transfer void in part is entirely void, which is true to the extent that neither of the parties may derive any benefit from it. It does not follow, however, that Hall could not recover. A fraudulent vendee may lawfully dispose of the property in any manner in which the fraudulent vendor might have disposed of it if the fraudulent transfer had not occurred. (*Dolan, Sheriff, v. Van Demark*, 35 Kan. 304, 309, 10 Pac. 848.) If Martin S. Snow had been insolvent, he could have employed an attorney to defend him in the civil and criminal actions, and could have made a transfer of property to secure his obligation to the attorney. Exercise of this privilege would have been subject to two conditions—first, that the transfer was made in good faith; and second, that the obligation to the attorney was a reasonable one so far as could be anticipated. (*Yeiser v. Broadwell*, 87 Neb. 583.) The fact that in retrospect the court reached the conclusion Hall's fee for defense of Martin S. Snow in the criminal case was too large did not entail forfeiture of the entire fee. The findings of fact establishing Hall's entire good faith are approved.

There is a cross appeal by the Snows. The findings of fact establishing the bad faith of the Snows are approved. Because of his participation in the fraud, N. D. Snow was not entitled to reimbursement out of the property wrongfully acquired.

The elaborate briefs for the respective parties have been fully considered. The foregoing disposes of the matters of most importance and which determine the decision. It is not practicable to extend this opinion further.

The judgment of the district court is affirmed.