No. 29,159.

AMIL ANDERSON and E. B. SHAWVER, *Appellees* and *Cross Appellants*, v. DORA B. STOCKWELL, N. M. DUDLEY, Receiver of the Moline National Bank, et al., *Appellants;* C. B. SHAFFER, *Appellee.*

(285 Pac. 526.)

Opinion filed March 8, 1930.

*Clifford Sullivan,* of Howard, and *Robert Stone, James A. McClure, Robert L. Webb* and *Beryl R. Johnson,* all of Topeka, for the appellants.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris* and *George B. Powers,* all of Wichita, for appellees Amil Anderson and E. B. Shawver; *Chester I. Long, J. D. Houston, Claude I. Depew, James G. Norton, W. E. Stanley, William C. Hook* and *Austin M. Cowan,* all of Wichita, for appellee C. B. Shaffer.

The opinion of the court was delivered by

JOCHEMS, J.: This action was brought by plaintiffs to foreclose a mortgage on 320 acres of land in so far as they claimed to own it through subrogation to the rights of the original holder. Plaintiffs were the owners of one-half the oil and gas royalty on the land.

Oil had been produced on the land and the royalties of plaintiffs had been applied by the holder of the mortgage to the payment of one-half the mortgage indebtedness. The other half of the mortgage indebtedness had been paid by applying the oil runs accruing to the credit of the one-half royalty interest owned by the defendant Shaffer. Plaintiffs sought to have the mortgage foreclosed against the surface rights of the land and in the alternative, in the event the surface did not bring a sufficient amount to reimburse them, against the other one-half royalty interest owned by Shaffer. Plaintiffs claimed they were entitled to invoke the doctrine of inverse alienation as against the defendant Shaffer, due to the fact that his royalty conveyance was made subsequent in time to the one under which plaintiffs claim, and that in neither royalty conveyance was the mortgage mentioned.

The case was tried to the court and findings of fact and conclusions of law entered. The facts are substantially as follows:

On May 8, 1923, John Leffingwell and wife, being the then owners of the two quarter sections of land in controversy, executed a mortgage to the Wichita Joint Stock Land Bank for $16,000, which mortgage was subsequently assigned to the Kansas City Joint Stock Land Bank. On September 20, 1923, Leffingwell and wife conveyed the land to John Egan and wife, who assumed the mortgage. On May 6, 1924, Egan and wife conveyed a one-sixteenth royalty interest in both quarters to Amil A. Anderson, one of the plaintiffs. In this royalty conveyance the mortgage was not mentioned. On May 31, 1924, Amil A. Anderson conveyed to E. B. Shawver, a coplaintiff, the one-sixteenth royalty in so far as it covered the quarter section. Again in this royalty conveyance the mortgage was not mentioned. At the foregoing dates there were no producing oil wells on the lands. On November 20, 1924, Egan and wife conveyed to the defendant C. B. Shaffer the remaining one-half of the oil and gas royalty on both quarter sections and on the same date they executed separate deeds to Dora B. Stockwell and John Leffingwell, conveying to each of them an undivided one-half interest in the above-described lands.

On December 9, 1925, Leffingwell and wife conveyed the one-half interest owned by them to the Moline National Bank. This bank failed and the defendant N. M. Dudley, receiver, appears as representative of that interest in this litigation. The mortgage above referred to contained the following clause:

"And to further secure the payment of said note the parties of the first part hereby assign to the party of the second part in whole or at the option of

the second party in such amounts or such proportionate part or parts as the second party may from time to time designate all of the rents, royalties, payments and delay moneys that may from time to time become due and payable on account of any and all oil and gas mining leases or mineral of any kind existing or that hereafter come into existence covering the above-described lands and all moneys received by the party by reason of this assignment shall be applied; first, to the payment of matured installments; and second, the balance if any to the principal remaining unpaid; provided that nothing herein shall be construed as a waiver of the priority of the lien created by this mortgage over any such lease made subsequent to the date of this mortgage."

In addition to the foregoing facts the court further found, in substance, that on November 19, 1924, Egan was indebted to the Moline bank in the amount of $8,100, and prior thereto he had executed and delivered to the bank a warranty deed for said land with the grantee's name omitted, as security for his indebtedness to the bank; that on November 19, 1924, Egan entered into a written contract with the Moline National Bank and one A. H. Hamlin (which contract was introduced in evidence) by the terms of which it was agreed to sell Hamlin the one-half section of land, which at the time carried with it the remaining one-half royalty, for the sum of $28,800 to be paid by Hamlin assuming the mortgage of $16,000 and paying the indebtedness of Egan to the bank in the sum of $8,100, the balance of $4,700 to be carried back on the land and a mortgage given to Egan to secure the same. The court found that in the making of this contract Hamlin was coöperating with Leffingwell and Dora B. Stockwell with a view to their taking title to the surface of the land but intending to secure the remaining one-half royalty interest for the defendant, C. B. Shaffer, and that Hamlin was the agent of Shaffer in that transaction, having been connected with Shaffer for something like eleven years, but further found that Hamlin was not authorized in writing by Shaffer to execute the contract. This contract was introduced in evidence as exhibit 1.

Later, on December 1, 1924, under the foregoing circumstances the Moline bank, through its president, made another contract with Hamlin, which was introduced in evidence as exhibit 2, by which the bank agreed to convey the remaining one-sixteenth royalty interest on the half section of land for the sum of $32,000, which it was agreed should be paid by Hamlin by his assuming the $16,000 mortgage, by paying $11,300 to the Moline bank and the remaining $4,700 to be paid to John Egan when the abstract was furnished and title found merchantable. This latter contract, exhibit 2, was

dated back to November 19, 1924, but was actually drawn and executed on December 1, 1924. The court further found that Hamlin was the agent of C. B. Shaffer in the making of exhibit 2, but that he so acted without any written authority from Shaffer. At the time of the execution of exhibit 2 the Moline bank still had in its possession the deed in blank from Egan and was trying to effect a sale so as to receive payment of its indebtedness from Egan. After the execution of the first contract, hereafter referred to as exhibit 1, Hamlin informed Shaffer that he had purchased for Shaffer the one-sixteenth royalty on the half section of land for $32,000, and Shaffer sent a draft for that amount to Hamlin, but on November 28 he wired Hamlin not to use the draft until he arrived there. Shaffer then came to Howard and Moline and on December 1, 1924, he met Hamlin and they went out to the property. On November 19, 1924, an oil well was being drilled on the land, and between that date and December 1 it came in as a producer. At the time this lawsuit was tried (May 17, 1929) there were thirty-two producing oil wells on the land.

After December 1, 1924, by mutual agreement of Hamlin, Egan and the bank, the blank deed previously executed by Egan and placed in escrow with copy of exhibit 1, was destroyed, and in lieu thereof there were substituted in place of the escrow with the bank, an oil and gas royalty deed in favor of Shaffer, a general warranty deed in favor of Dora B. Stockwell covering an undivided one-half interest in the surface rights; and a general warranty deed in favor of Leffingwell for the other undivided one-half interest of the surface rights. The deed to Shaffer was for a one-sixteenth royalty. All of these instruments were dated back to November 20, 1924. The deeds to Stockwell and Leffingwell contained this clause:

"Except a $16,000 first mortgage to the Wichita Joint Stock Land Bank; two oil and gas leases, also a one-sixteenth royalty grant to Amil A. Anderson and a one-sixteenth royalty grant to C. B. Shaffer, all of which second party assumes."

When Shaffer came to Howard he was advised by Hamlin of exhibit 2 and knew its terms. He had intended to buy the royalty for $32,000. After arriving he examined the records and ascertained that by the terms of the mortgage the oil royalties were liable for payment thereof as well as the surface of the land and then instead of paying the mortgage or assuming the payment therefor, as provided in exhibit 2, he told the president of the Moline bank that he

had decided to let the mortgage stand and would only owe $11,000 more. He had previously, on December 18, paid $5,000 to the bank and taken receipt of the bank therefor. With reference to the $16,000 mortgage he told the bank he was ready to pay his half, but not the other half; that he "was not going to pull Anderson's chestnuts out of the fire," and let it stand. The royalty deed was delivered to Shaffer with this understanding, and the surface deeds to Leffingwell and Stockwell were also delivered with the same understanding. Shaffer had paid $5,000 and on·January 11 he paid the bank $11,000, which was deposited, $8,100 to the bank for Egan's indebtedness and $4,700 to Egan personally, while the remainder was deposited to the credit of E. A. Chaffin, president of the Moline bank, and A. H. Hamlin in equal amounts. Chaffin applied the amount deposited to his credit to the indebtedness of Leffingwell to the bank, and that which was paid to Hamlin was credited to Dora B. Stockwell. Shaffer was then delivered the oil and gas royalty deed in which there was no clause referring to the mortgage. At the same time the deeds to Leffingwell and Stockwell were delivered containing the assumption hereinbefore referred to.

On March 30, 1925, Leffingwell commenced a partition suit against Dora B. Stockwell in the district court of Elk county. The defendant Stockwell filed an answer and cross petition in which she named as additional parties defendant the original makers of the mortgage, the royalty owners, the lessees under the oil and gas rights, and the holder of the mortgage. She made affidavit for publication service against C. B. Shaffer and others, commencing August 12, 1925. The answer date was set for September 24, 1925. Due proof of publication was filed. Answers were filed by all defendants except Shaffer. The defendant, Dora B. Stockwell, in her answer and cross petition admitted acceptance of the deed and that she was liable for payment of a part of the mortgage, but only in proportion as the value of her interest in the land bore to the total value of all the interests owned therein. The issues in the partition suit were not identical with the issues in this case. Three days before the answer date Dora B. Stockwell dismissed her cross petition without prejudice. On September 30, 1925, a hearing was had. A stipulation was drawn by the various parties who appeared and some evidence was introduced, and on November 25, 1925, the court rendered judgment in that case which was introduced in this action. No dismissal was entered in the partition suit dismissing Shaffer as a

party defendant. He was notified of the rendition of the judgment soon after and thereafter acquiesced in the judgment and carried out its terms and to that extent adopted and acted upon the judgment, and adopted the judgment in his pleadings in the case here. In the partition action the judgment in substance was that the surface was primarily liable to the payment of the mortgage and that the liability of the royalty to pay the same was secondary; that the holders of the royalty upon payment made from the proceeds derived from oil runs should be subrogated to the rights of the holder of the mortgage, but that it could not be foreclosed by them until the mortgage was fully paid; that the Joint Stock Land Bank, holder of the mortgage, must make application of the proceeds from the royalty interests in equal proportion, taking the same proportionate part from the several outstanding royalties, and that after payment the holders of the royalty interests should be entitled to enforce the mortgage against the fee and surface rights in the same manner as the original holder.

At the time the action was tried the mortgage had been fully paid and there was in addition a balance of $745 derived from the royalty money which had been paid over by the mortgage company to the clerk of the court. The court found that there was no fraud worked upon Egan and wife in connection with the various deeds and royalty grants.

The court concluded as a matter of law:

"1. John Egan and wife, Dora B. Stockwell and John Leffingwell are personally liable for the payment of the claim of the plaintiffs and C. B. Shaffer.

"2. Dora B. Stockwell and the receiver of the Moline National Bank are estopped to recover as against Shaffer by reason of the proceedings and judgment in the partition case.

"3. The plaintiffs and C. B. Shaffer are subrogated to the rights of the Joint Stock Land Bank and are entitled to have the mortgage foreclosed on the surface right of said land to reimburse them for the oil which was taken and applied in the payment of the mortgage (and said rights are coördinate).

"4. John Egan and wife are not entitled to recover under their cross petition."

The court ordered the sale of the surface rights and the payment of the proceeds to the taxes, to the costs of the action and to payment of the judgment entered in favor of plaintiffs and C. B. Shaffer. The balance, if any, was to be paid to the clerk of the court. The court further ordered that if the property did not bring sufficient to pay the judgment of plaintiffs and Shaffer in full, then the amount

realized .after payment of the taxes and costs should be applied equally to the payment of the judgment in favor of plaintiffs on the one hand and the judgment in favor of Shaffer on the other and the funds held by the clerk of the court be awarded one-half to the plaintiffs and one-half to the defendant Shaffer.

The defendants Dora B. Stockwell and N. M. Dudley, receiver, appeal, claiming that the court erred in its conclusions of law. The plaintiffs Amil A. Anderson and E. B. Shawver perfected a cross appeal in which they specifically complained of the third conclusion of the court, and contend that they are entitled to invoke the doctrine of inverse alienation.

The defendants Stockwell and Dudley take the position that the correctness of the court's conclusions depends upon answers to the following questions:

(1) Was the judgment of the court rendered in the former case *res judicata* as between the appellants and Shaffer?

(2) Did the application of Shaffer's royalty money to the payment of the mortgage indebtedness amount to an adoption of the judgment, and if so did that fact entitle him to the claim which he now makes for reimbursement?

As to the first question it is clear to us that the trial court did not find the partition suit to be *res judicata* as against the appellants. On the contrary the court's finding No. 20 clearly indicates that the trial court did not so find. This finding reads:

"In this partition suit no question was specifically raised in the pleadings and no evidence introduced with reference to the contract, exhibits 1 and 2, and no question was raised as to the validity of exhibit 1, nor as to any fraud perpetrated by anyone in connection therewith. No question was raised specifically as to the validity of the royalty deed to Shaffer and the two deeds to Leffingwell and Stockwell. No question was specifically raised as to the consideration to be paid by said Shaffer for his royalty deed."

This clearly indicates that the court found the issues in the partition suit were not identical with the issues in this case. The court based its decision upon estoppel. This is clear from the court's conclusion No. 2, *supra*. We find from a perusal of the record that there was ample evidence to justify the court in finding an estoppel against the appellants. It must be noted that in the partition suit these appellants and their predecessor in title were parties to the action; that while appellant Stockwell dismissed her cross petition in that action she was not dismissed as a party de-

fendant; that when the judgment was entered she appeared by her attorney and the other parties appeared, except the defendant Shaffer. The parties, including Leffingwell, predecessor in title to Dudley and Dora B. Stockwell and others, entered into a stipulation which is incorporated in the journal entry of judgment and upon which the judgment was based. In this stipulation the deeds to Stockwell and Leffingwell are set forth and described and the clause hereinbefore noted as appearing in both said deeds, which set forth certain exceptions followed by the words—"all of which second party assumes"—was likewise set forth in the stipulation. After reciting the provisions in the deeds it was stipulated in connection with the above-quoted provision:

"The parties hereby agree that, for the purposes of this suit, the assumption of said mortgage indebtedness shall be construed and considered to have been intended by the parties to said instrument that said Dora B. Stockwell should assume but one-half the mortgage indebtedness to the Wichita Joint Stock Land Bank."

The same provision and the same stipulation were set out applying to Leffingwell with reference to his deed. It was further stipulated that the mortgage company had notified the oil company producing the oil on the premises to stop payment of royalty to the holders and that since that time Anderson and Shawver had received no royalty money.

The court adopted the stipulation of the parties and heard additional evidence and then concluded that appellant Stockwell was owner of a one-half interest in the land; that Leffingwell was owner of the other half; that Anderson and Shawver owned half the landowners' royalty and that C. B. Shaffer owned the other half; that all of said royalties were subject to the mortgage and that the mortgage company, if it elected, had the right to demand payment of the proceeds from the royalty, taking the same in equal proportion from the respective owners, one-half from Shawver and Anderson and one-half from Shaffer. It further concluded that upon payment of the mortgage being made by the royalty owners, they should be entitled to subrogation to the rights of the holder of the original mortgage. The court entered judgment that the interests of Leffingwell and Stockwell were primarily liable for the payment of the mortgage; that Shawver, Anderson and Shaffer should have the right to be subrogated and proceed against the

surface of the lands under the mortgage whenever the same had been paid from the proceeds of the oil royalties.

Neither of the appellants herein appealed from the judgment in the partition action, and the time for appeal had long since expired prior to the trial of the case at bar. The appellants had the right in the partition action to litigate as against the defendant Shaffer, whom they had made a party defendant, all the questions which they litigated against him in the case at bar. They did not see fit to do so. On the contrary, appellant Stockwell dismissed her cross petition and she and her codefendant Leffingwell, who is predecessor in title of the appellant Dudley, both stipulated as hereinbefore set forth. The judgment was entered upon their stipulation and other evidence. This judgment became a matter of record. It involved and affected substantial rights of the defendant Shaffer by applying to the payment of the mortgage the royalty moneys which were due him. Shaffer acquiesced in the judgment. He adopted it. He took no appeal although still a party to the suit. The dismissal of the cross petition of the one party did not, in our judgment, dismiss him from the case as a party defendant. But we hold, also, that even if he were not a party to the partition suit and had a lawful right to adopt the judgment therein, that when he did adopt this judgment under the circumstances hereinbefore set out, the trial court was correct in its conclusion of law No. 2. We hold, likewise, that the appellants are estopped as against Shaffer by reason of the proceedings and judgment in the partition suit. It should be noted that the court held that there was an estoppel not solely on account of the judgment entered in the partition suit, but on account of the proceedings therein; in other words, an estoppel by reason of the conduct of the parties in that case. We see no difference in principle between applying the rule of estoppel by conduct to the actions of the parties which occur in litigation as compared with the acts of parties outside the court room. The trial court was justified in finding an estoppel by conduct.

In support of the foregoing we quote from 2 Freeman on Judgments (5th ed.), p. 1864:

"And a suit for partition is perhaps the only proceeding known to the law in which every possible question affecting the title to real estate may be made an issue and determined, and in which every person, whether in being or not, may be bound by such determination. . . . But as to the persons who are brought before the court the judgment is conclusive of every issue necessary

to its support. As already stated, all questions of title or possession may be put in issue and finally determined."

On pages 1866 and 1867 the same writer further says:

"If one is made a party defendant under an allegation that he claims some interest in the property, the nature of which is to the plaintiff unknown, and he fails to answer, and a judgment is entered declaring other persons to be the owners of the property, and partition is made accordingly, he is estopped by the judgment and cannot afterwards show that he was a cotenant and that a portion of the land ought to have been set apart to him. . . . A decree adjudging a lien on the property or part of it is conclusive of that matter. The fact that the party is described as having a particular interest will not prevent the judgment from affecting a different interest, if such he had. As the object of the proceeding is to make a final partition of the property, it is unreasonable to suppose that when one is alleged to have a particular interest he is made a party with respect to that interest only, or is left free to avoid the partition by subsequently asserting another interest."

In the case of *Cornell University v. Parkinson*, 59 Kan. 365, 53 Pac. 138, it was held:

"Where a plaintiff brought an action upon a note, whereon there had been interest coupons but which had been detached, and asked judgment upon the principal note without setting up or asking judgment on the coupons, but on the contrary solemnly declared in an agreed statement of facts presented to the court that all the coupons had been paid, and thereupon judgment was rendered and a mortgage given to secure the debt was foreclosed; other parties to the proceeding, who held liens on the mortgaged premises without actual knowledge to the contrary, had a right to presume and to act upon the presumption that the interest coupons had been paid." (Syl. ¶ 1.)

See, also, *Westerman v. Corder*, 86 Kan. 239, 119 Kan. 868; *Hoover v. Hoover's Estate*, 104 Kan. 635, 180 Pac. 275.

Under the provisions of the statute on partition (R. S. 60-2114) the court shall have power to make any order that may be necessary to make a just and equitable partition between the parties and secure their respective interests.

Upon the proposition that Shaffer had a right to adopt the judgment in the partition suit we again quote from 1 Freeman on Judgments (5th ed.), p. 935:

"And in those cases where one not an actual party may and does elect to claim the benefit of a judgment or decree, it becomes conclusive for and against him, notwithstanding the apparent violation of the principle of mutuality."

See, also, *O'Brien v. Heeney*, 2 Edwards Ch. (N. Y.) 241; *Trust Co. v. Stevenson*, 114 Ohio St. 1, 150 N. E. 726; *Seals v. Snow*, 126 Kan. 246, 267 Pac. 1105.

In 30 Cyc. 308 it is said:

"If proceedings taken in court to partition property go so far that allotments are made and possession is taken and held under them, any party so taking and holding possession or otherwise knowingly receiving the benefit of the partition thereby ratifies it and becomes estopped to assail it or deny its validity."

As to the arguments advanced by appellants to the effect that Shaffer was bound by his agreement to assume the payment of the $16,000 mortgage and that he did not pay the full amount of the consideration which he agreed to pay for his royalty interest, we feel that these are answered by the findings of the court. These show that the two contracts made by Hamlin were not authorized by Shaffer in writing; that although Shaffer did intend to buy on the terms of the unauthorized contract (exhibit 2) still he changed his mind. He was not legally bound by that contract. He went to the courthouse and saw the mortgage and became acquainted with its terms and then decided that he would not deal in accordance with exhibit 2, but went back and made a new contract—an entirely different contract. That is all there was to it. He is only accountable upon the basis of the contract which he finally made, and this did not obligate him to payment of the mortgage, nor did he assume it as between himself and appellants Stockwell and Dudley.

As to whether or not the court was justified in awarding judgment in favor of Shaffer to be subrogated against the appellants to the extent to which his royalty money had been applied in the payment of the mortgage, we find no error in this respect. The doctrine of subrogation is an equitable one. In 25 R. C. L. 1311, it is said:

"Subrogation in its broadest sense is the substitution of one person in the place of another with reference to a lawful claim or right, and it is frequently referred to as the doctrine of substitution. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it."

In the same volume, at page 1313, it is said:

"It does not owe its origin to statute or custom, but is a creature of courts of equity, having for its basis the doing of complete and perfect justice between the parties without regard to form. It is a doctrine, therefore, which will be applied or not according to the dictates of equity and good conscience, and considerations of public policy, and will be allowed in all cases where the equities of the case demand it. It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice demands its application, in opposition to the technical rules of law which liberate se-

curities with the extinguishment of the original debt. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. In the administration of relief by subrogation, it will be found that the jurisdiction of equity rests largely on the prevention of frauds and on relief against mistakes; and the expansion of the rule has so nearly covered the field that it may now be said that wherever a court of equity will relieve against a transaction, it will do so by the remedy of subrogation, if that be the most efficient and complete that can be afforded."

In the case at bar, the court having found that moneys which accrued from the royalty interest of Shaffer had been used to pay an obligation which had been assumed by the appellants, clearly equity demanded that Shaffer be entitled to subrogation against the property of the appellants which was the security for the debt assumed by them.

This brings us to the point raised by the cross appeal of the plaintiffs Anderson and Shawver. As cross appellants they make the contention that having bought their royalty first, the rule of inverse order of alienation applies and they are entitled to reimbursement first from the surface rights to the exclusion of Shaffer from any participation therein, and further, to the right of subjecting the Shaffer royalty to reimbursement to them in the event the surface rights do not bring sufficient to fully reimburse them.

In finding No. 23 the court set forth a portion of the judgment in the partition action, which reads as follows:

"The court further concludes that the surface rights . . . are primarily liable to the payment of said mortgage, and that the liability of said royalty to pay the same is secondary; and the court concludes that although subrogation shall result *pro tanto* in favor of the holders of said royalty interest when and as said payments were made, the right to foreclose said land so far as said royalty holders are subrogated as aforesaid, shall not attach until all of said mortgage shall have been paid. . . . The Land Bank has neither a legal nor equitable right to make applications of the royalty in unequal proportions, but if it elect under its mortgage to apply said royalty, it must do so taking the same proportionate part of the several outstanding royalties as above described. . . . The holders of said royalty shall be entitled to enforce said mortgage to such extent and in the same manner as the said Kansas City Joint Stock Land Bank would have been and is entitled to enforce said mortgage against the fee and surface rights in said land."

In finding No. 24 the court set forth that following the rendition of the judgment in the partition suit Shaffer was advised thereof by the plaintiff Anderson, who sent Shaffer copy of the entry of judgment. Later, on September 28, 1926, Anderson in a letter to Shaffer, referring to this partition action, said:

"This gave us an opportunity which we had been looking for and we accordingly filed a cross petition and had all interests clearly defined in a trial before Judge Ayres. Your interests were, of course, protected along with our own in the suit. . . . We will then, of course, hold a mortgage on the land equivalent to the levies against our royalty money. It will probably be necessary after paying this mortgage to bring suit to foreclose the same. I feel that you will probably be willing and glad to stand your proportionate part of this suit, but will discuss this with you at a later date."

To the above Shaffer replied on October 7, 1926:

"I am perfectly willing to go along with you and bear my share of the expenses."

On December 11, 1926, Anderson again wrote Shaffer:

"As we have previously advised you, we were subrogated against the rights of the mortgage company. The bank cannot assign this mortgage under the law and for that reason we are forced to bring suit to foreclose. It may take a little time to close the matter out. After hearing from you, I advised our attorney that you had expressed a willingness to go ahead and work the matter out with us, so we presume he is making you a party to the foreclosure action."

In the third conclusion of the court, which is hereinbefore set out, the court found that the rights of the plaintiffs and the defendant Shaffer to be reimbursed by a foreclosure on the surface rights were coördinate.

As to the right of plaintiffs to invoke the doctrine of the inverse order of alienation as against the defendant Shaffer we conclude from the findings that the trial court based its decision upon this point upon two propositions. First, that by the proceedings and stipulation in the partition action, and, second, by the subsequent correspondence, the plaintiffs had waived any right to invoke the doctrine of inverse order of alienation against the defendant Shaffer and that plaintiffs were thereby estopped in this action from invoking that relief. This court reaches the same conclusion, based on the findings, and the conduct of the plaintiffs in the partition action. This conclusion makes it unnecessary to determine the question now raised as to whether the doctrine of inverse alienation applied to the situation of the parties as it existed before and at the time of the partition suit. In this connection, while it is not necessary to a decision of this case, and while the facts are not exactly analogous to those in the case at bar, it is of interest to note a prior decision of this court on the doctrine of inverse order of alienation, viz., *Newby v. Fox,* 90 Kan. 317, 133 Pac. 890.

We find no error in the proceedings of the trial court.

The judgment is affirmed.