No. 26,579.

THE PEOPLES STATE BANK OF HARRIS, *Appellant*, v. H. H. STALEY et al., *Appellees*.

No. 26,578.

J. H. TURRELL, *Appellant*, v. H. H. STALEY et al., *Appellees*.

SYLLABUS BY THE COURT.

1. DESCENT AND DISTRIBUTION—*Rights of Creditors of Heirs—Effect of Indebtedness of Heirs to Estate.* An indebtedness owing by an heir to his ancestor's estate remaining unpaid on final settlement of the estate constitutes an equitable lien upon such heir's share of the real property belonging to the estate superior to the lien of his judgment creditor, and after such final settlement the interests of the other heirs to the real property are paramount to the lien of the judgment creditor—following *Wilson v. Channell,* 102 Kan. 793, 175 Pac. 95.

2. SAME—*Rights of Creditors of Heirs—Distribution Agreement as Creating Indebtedness of Heir to Estate.* Where heirs agree to divide their ancestor's estate, and conformably thereto one of them receives his portion in personal property, agreeing, in consideration thereof, to relinquish his interest in real property belonging to the estate, he becomes thereby indebted to the estate, and the interest of the other heirs therein is paramount to the lien of his judgment creditors.

Appeal from Anderson district court; HUGH MEANS, judge. Opinion filed April 10, 1926. Affirmed.

Descent and Distribution, 18 C. J. p. 967 n. 34; 4 L. R. A: n. s. 189; 1 A. L. R. 993; 30 A. L. R. 775; 11 R. C. L. 245.

*J. Q. Wycoff,* of Garnett, and *John A. Hall,* of Pleasanton, for the appellants.

*F. M. Harris,* of Ottawa, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: Elizabeth B. Staley died intestate August 11, 1920, leaving a son and three daughters as her only heirs. At the time of her death she owned real estate valued at from $40,000 to $50,000 and approximately $7,000 in personal property consisting largely of bonds and other securities. H. H. Staley, her son, owed her $10,000 and her two sons-in-law about $2,200, all evidenced by promissory notes. H. H. Staley was appointed administrator. The estate was in process of administration when, on October 7, 1922, the plaintiffs filed these actions against the defendant Staley and on December 14 following, at the same term of court, recovered judgments against him for $3,176. The question involved is whether plaintiffs' judgments constituted prior liens on Staley's interest in the real property that belonged to his mother's estate.

The trial court found that Staley owed his mother $10,000 at the time of her death; that in September, 1921, the estate owned about $7,000 of personal property, at which time he (Staley) made an agreement of division with the other heirs whereby he should have all of this personal property, in consideration for which, with the release of liability on his $10,000 note, he would have no claim against the real estate; that it should belong to his sisters; that, in pursuance of this agreement, he took, used and disposed of the personal property, and later (November, 1922), in furtherance of such agreement, made deeds to his sisters covering the real property; that they were effective from September, 1921, and that he had no interest in the land at the date of the plaintiffs' judgments; and therefore plaintiffs' liens on the land were of no avail.

The plaintiffs appeal, contending that there was no valid and enforceable contract between Staley and the other heirs in existence on October 9, 1922, and that he could not, by subsequent acts, prejudice the rights of the lien holders (plaintiffs); that the contract between Staley and the other heirs was not enforceable against him, and that he could not waive his right therein against his judgment lien holders. While it is not disputed that Staley owed his mother the $10,000, it is contended that he did not owe her the $7,000, and that the understanding or terms of agreement between Staley and

the other heirs was altogether too uncertain to be enforced; that the indebtedness and the suspicious method in which it was handled indicated an arrangement which was merely an afterthought put into execution for the purpose of assisting the defendant Staley to defeat his creditors.

The controversy in the instant case is very similar to and in our opinion controlled by the decision in *Wilson v. Channell,* 102 Kan. 793, 175 Pac. 95. In that case it appeared that Martha Wilson died intestate, owning real estate. One of the heirs, H. O. Wilson, was indebted to her at the time of her death in a sum greater than his distributive share of the real estate. Sometime before that the Rush Manufacturing Company recovered a judgment against H. O. Wilson. After the death of Martha Wilson and after her estate had been administered, the probate court, in its final order of distribution, found and entered an order that H. O. Wilson, at the time of the death of his mother and ever since, was indebted unto her and her estate in a sum in excess of any interest he might have therein, and that by reason thereof he had no interest in her estate, and none at the time of the death of his mother, and that all persons claiming an interest in the estate (in or through him) should be barred. The case came to this court on appeal in an action to quiet title. It was contended that the Rush Manufacturing Company, having obtained a judgment against H. O. Wilson, its judgment became a lien on land inherited by him superior to the claim of the estate. After reviewing the authorities it was held that the heir is chargeable with what he owes the estate; that what he has received is to be treated, for purposes of distribution, as a part of the estate. That is to say, the probate court had, in the final settlement, found and adjudged the indebtedness of H. O. Wilson to the estate was greater than his distributive share; for which reason he had no interest in the land. In affirming the judgment this court decided that:

"An indebtedness owing by an heir to his ancestor, remaining unpaid on the final settlement of the estate, constitutes an equitable lien upon such heir's distributive share of the real property belonging to the estate, superior to the lien of a judgment existing and docketed against him at the time of the death of his ancestor; and, after such final settlement, the interests of the other heirs in the real property are paramount to the lien of the judgment creditor." (Syl. ¶ 1.)

The Wilson case was followed and approved in the recent case of *Blackwood v. Blackwood,* ante, p. 72, 242 Pac. 451.

*Stanley v. United States Nat. Bank,* 110 Ore. 648, 224 Pac. 835, was an action to quiet title to certain timber lands which were assets of the estate of Lemuel Stanley. William H. and F. S. Stanley were sons and each a devisee and legatee under the will of the decedent. During the course of the administration of the estate F. S. Stanley, executor, paid himself, without order of court, certain cash and specific legacies bequeathed him under the will, and in addition he appropriated and converted to his own use some $84,000 of funds of the estate. Subsequently the Lumberman's National Bank recovered a judgment against him on which, at the time of this controversy, there remained an unpaid balance of $12,000. The judgment was transferred to the defendant. Other legatees under the will of Lemuel Stanley brought the action to quiet title against F. S. Stanley and the bank, contending that the misappropriation of the assets of the estate by F. S. Stanley, while acting as executor, to an amount largely in excess of the value of his share of the estate, in view of his insolvency, was deemed, in equity, a full satisfaction of his right and claim to such share and an extinguishment of his title in and to the remaining assets, both as against himself and as against his creditor. On the other hand, the bank insisted that the principle invoked by the plaintiffs is restricted to personal property of the estate and does not extend to the real property, the title to which it is claimed vested in F. S. Stanley upon the death of the testator. Among other things, the court held that:

"The right and duty of an executor or administrator to retain a legacy from a debtor to the estate and apply it to the indebtedness exists though the heir or legatee is the administrator or executor himself, and it is immaterial whether the indebtedness arose before or after the death of deceased.

"The indebtedness of a legatee or distributee constitutes assets of the estate, which it is the duty of the executor or administrator to collect for the benefit of creditors, legatees, and distributees, and to the extent of such indebtedness the distributive share or legacy of the debtor is regarded as having been paid." (Syl. ¶¶ 3, 4. See, also, *Harvey v. White,* 129 Atl. 263 [R. I.], and cases cited. Also notes in 1 A. L. R. 991, and 30 A. L. R. 775, in which the cases pertaining to the question are arranged and digested under appropriate heads.)

We are of opinion there was sufficient evidence in the instant case to sustain the finding and conclusion of the trial court that there was a valid agreement between the heirs whereby H. H. Staley was to relinquish his right to the real estate; that it was made before the filing of these actions; that Staley, in conformity with such agreement, received his portion of the estate in personal property

and became thereby indebted to the estate, and that the interest of the other heirs became paramount to the liens of his judgment creditors.

The judgment is affirmed.