No. 32,198

ZULA WRIGHT, *Appellee*, v. ELMER B. SIMPSON, *Appellant*, MARY S. GIBBS et al., *Appellees*.

(51 P. 2d 1)

Opinion filed November 9, 1935.

*F. W. Bayless*, of Fort Scott, for the appellant.

*G. R. Gard, Stanley E. Toland*, both of Iola, and *Irving D. Ross*, of Newkirk, Okla., for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action in partition brought by one of the devisees under the will of her grandfather, in which she was by the terms of the will given an undivided one twentieth interest in and to all of the property of which her grandfather died seized and possessed, real, personal and mixed. The land is described in the petition and all the other devisees were made parties defendant and their respective shares in the estate were named as stated in the will.

There were four other grandchildren besides the plaintiff, each of whom received a one twentieth interest under the will, making a total of one fourth of the estate. One son, Elmer, and two daughters, Mary and Ruby, each were given by the will an undivided one fourth of the estate. The petition further alleged that no part of the real estate was a homestead and it was all susceptible to partition. All the other devisees answered, and aside from the correction in the description of some of the real estate the allegations of the petition are not denied by any of them.

In the separate answers of Mary, one of the daughters of the deceased, and the four Partain grandchildren of the deceased, a new matter was introduced which they called a receipt on account of advancements, and it was pleaded as a modification of the allowances made by the terms of the will. It is as follows:

"AGREEMENT FOR DANIEL SIMPSON,
BLUE MOUND, KANSAS, DECEMBER 16, 1930

"We, the undersigned son and daughters of Daniel Simpson, or D. L. Simpson, hereby acknowledge the receipt of the following money, land and notes as an advance part of our shares (whatever same may be) of the estate of Daniel Simpson, up to this date:

"Elmer B. Simpson, son, acknowledges the receipt of the following: A deed to the following real estate: the southwest ¼ and the south ½ of the northeast ¼ of section 1, twp. 23 S., R. 21 E., containing 240 in Linn county, Kansas:

| | |
|---|---|
| "Acres more or less, valued at | $12,000.00 |
| One note, valued at | 1,135.50 |
| Cash advanced on barn | 601.21 |
| Cash advanced | 584.54 |
| | $14,321.25 |

"Mary Gibbs, daughter, acknowledges the receipt of the following notes:

| | |
|---|---|
| "One note for | $2,000.00 |
| One note for | 4,201.65 |
| | $6,201.65 |

"Ruby Violet DePuew, daughter, acknowledges the receipt of a deed to the following real estate: the southwest ¼ of section 2, twp. 22 S., range 21, containing 156 acres more or less, in Linn county, Kansas, fractional:

"Valuation ................................................. $7,020.00

"We agree and acknowledge that we have received of Daniel Simpson the above-named amounts and understand that the same is an advance part of our shares of his estate.

"Dated this 16th day of December, 1930.

"In witness whereof we hereunto subscribe our names this 16th day of December, 1930, and acknowledge the execution of the same.

"ELMER B. SIMPSON.
"MARY S. GIBBS.
"RUBY VIOLET DePUEW.

"Subscribed to before me this 16th day of December, 1930.
"(Seal)                                   C. A. HIATT, *Notary Public.*
"My commission expires January 19, 1931."

This receipt was sometimes called in the pleadings a family settlement, although it was made about two weeks before the execution of the will of the deceased and eleven months before his death.

Findings of fact and conclusions of law were made by the trial court and judgment was rendered in favor of the contention of the daughter Mary and the Partain children on April 17, 1934, from which the son Elmer appeals. The daughter, Ruby, and the plaintiff are not represented here on appeal.

A number of preliminary objections to the scope and extent of the appeal may properly be traced to the omission from the abstract of the correct date of the rendition of the judgment, which is supplied by a corrected or supplemental abstract. This, together with the denial of jurisdiction of the district court in the reply of Elmer as to the new feature injected into the partition case, the reference in the journal entry to the ruling on the demurrer to the evidence, the reference in each of the two motions for a new trial as to the decision being contrary to the evidence and to the specific language of the specifications of error, disposes of the preliminary questions raised and urged by the appellees and entitles the appellant to a review as to the errors of which he complains.

Aside from the question of jurisdiction of the district court to hear and determine the new matter of advancement, indebtedness, family settlement or whatever it may be called, that was brought

into the partition action by the appellees, we shall conclude that there was sufficient evidence before the court to support the findings of fact made by the trial court, which findings are as follows:

"1. That Elmer B. Simpson, Mary S. Gibbs and Ruby Violet DePuew, on December 16, 1930, signed a paper in which they acknowledged the receipt of certain real estate and personal property from Daniel Simpson, their father, and that the same showed on its face, and the court finds the facts to be, that Elmer B. Simpson, Mary S. Gibbs and Ruby Violet DePuew received real estate and money as follows:

"Elmer B. Simpson:

| | | |
|---|---:|---:|
| Real estate valued at | $12,000.00 | |
| Money, one note | 1,135.50 | |
| Money on barn | 601.21 | |
| Money, cash advanced | 584.54 | |
| | | $14,321.25 |

"Mary S. Gibbs:

| | | |
|---|---:|---:|
| Money, one note | $2,000.00 | |
| Money, one note | 4,201.65 | |
| | | $6,201.65 |

"Ruby Violet DePuew:

| | | |
|---|---:|---:|
| Real estate valued at | $7,020.00 | $7,020.00 |

"2. That there is no evidence showing, nor is there any claim made, that the real estate and money passing to Elmer B. Simpson, Mary S. Gibbs and Ruby Violet DePuew were gifts to them, respectively, by Daniel Simpson in his lifetime, nor that they purchased and paid for said real estate, or that they gave anything in value for the money so received.

"3. That Daniel Simpson died on November 16, 1931, and left a last will and testament dated December 30, 1930; that said will has been probated in the probate court of Linn county, Kansas, and that said will made no reference to any real or personal property passed to Elmer B. Simpson, Mary S. Gibbs or Ruby Violet DePuew, but by the terms of said will gave one fourth of all his estate to Elmer B. Simpson, one fourth to Mary S. Gibbs and one fourth to Ruby Violet DePuew, and the other one fourth to his five grandchildren, Emerel Partain, Kenneth Partain, Zula Wright, Doris Partain and Louise Partain, in equal shares, which grandchildren were sons and daughters of two deceased daughters of the said Daniel Simpson.

"4. That the real estate described in the petitions and various pleadings by the different parties of this suit was the property of Daniel Simpson at the time of his death, and is described as follows, to wit (description omitted) and is subject to partition."

The first conclusion of law is as follows:

"1. That the instrument signed by Elmer B. Simpson, Mary S. Gibbs and Ruby Violet DePuew, mentioned in paragraph one of the findings of fact, bound them to pay to the estate of Daniel Simpson out of their shares in said estate the respective amounts therein set forth, and that by reason of the conduct of said parties they are now estopped from denying the binding force and effect of said instrument."

The second conclusion of law finds the proportionate share of the estate of the deceased to which each devisee is entitled.

The first part of the third conclusion of law is as follows:

"3. That Elmer B. Simpson is indebted to the estate of Daniel Simpson in the sum of $14,321.25; that Mary S. Gibbs is indebted to the estate of Daniel Simpson, deceased, in the sum of $6,201.65; and that Ruby Violet DePuew is indebted to. the estate of Daniel Simpson, deceased, in the sum of $7,020; and that in the partition of. the real estate involved in this action Elmer B. Simpson, Mary S. Gibbs and Ruby Violet DePuew shall be charged with the respective amounts they are found hereby to be indebted to said estate, and they are hereby required to account to said estate for said amounts out of their share of the real estate partitioned in this action, and in the event that their respective shares in this real estate be insufficient to satisfy their indebtedness to said estate, then judgment for the balance due shall be entered against them or either of them for such amount as is due to be determined by this court at that time, said judgments to be in favor of the administrator of the estate of Daniel Simpson, deceased, and the amounts of said judgments withheld from their respective shares in said estate in making final distribution of the estate of said Daniel Simpson, deceased, in the probate court of Linn county, Kansas."

The appellant first argues that the items in the written instrument referred to are not and cannot be advancements, and appellees contend, we think correctly, that the conclusions reached by the trial court concerning them do not make them advancements, but items of indebtedness to the estate of the deceased.

Appellant asserts as a third ground that the judgment of the district court cannot be sustained on the theory that the instrument signed by him and his sisters was in the nature of a family settlement. In this the appellees agree, although this was an allegation in one of the appellee's answers. This leaves for consideration the second point raised by the appellant that to sustain the judgment the instrument above referred to would have to be read into and be a part of the will of the deceased.

As to whether the findings of fact support the conclusions of law we shall be especially concerned with three things: the jurisdiction of the district court to hear and determine in a partition suit matters of indebtedness due the estate of a decedent, the question of reading into a will a paper signed by children before the will was written, and the question of estoppel.

Article 21 of chapter 60 of the Revised Statutes of Kansas limits partition to real property. However, R. S. 60-2114 states that—

"The court shall have full power to make any order not inconsistent with

the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests."

Among the decisions of this court construing the section quoted are those cases involving accounting as between cotenants for matters like rents received, taxes paid or improvements made. One of the most recent cases along this line is *Beeching v. Beeching*, 135 Kan. 242, 10 P. 2d 7, where one of the tenants in common and in charge of the property for himself and others received a large amount of money not fully accounted for to the others.

In the case of *Mackey v. Mackey*, 99 Kan. 433, 163 Pac. 465, one cotenant excluded another cotenant from possession of the common property, and the court properly charged her share of the property with the fair rental value of the property during the time she dispossessed the other.

In *Sawin v. Osborn*, 87 Kan. 828, 126 Pac. 1074, the real property was incapable of being equally divided, there being a difference of $250 in the only possible division which could be made, and the court held that to charge the share of one party receiving this more valuable portion with that difference was within the terms of the statute in the making of a just and equitable partition between the parties.

The facts in the case of *Peoples State Bank v. Staley*, 120 Kan. 650, 244 Pac. 1061, are quite similar to those in the case at bar, but it was not a partition action. It was a question of whether the judgment of a creditor of one of the heirs of a decedent was prior to the rights of the other heirs when the debtor heir also owed the estate a large sum and had, subsequent to the death of the ancestor, entered into a contract with the other heirs about his indebtedness to the estate.

In the case of *Blackwood v. Blackwood*, 120 Kan. 72, 242 Pac. 451, the quarrel between the heirs was concerning a debt owing by one of them to the estate of the decedent. The action was not one in partition but one to quiet title.

The case which was followed in the Staley case was *Wilson v. Channell*, 102 Kan. 793, 175 Pac. 95, and there an heir owed his ancestor before his death, and his coheirs were held to have a superior lien on his distributive share of the estate above that of a general creditor of such heir.

In the case of *Banner v. Welch*, 115 Kan. 868, 225 Pac. 98, it was held:

"But this decree should not be treated strictly as one in partition. This is a suit in equity and the court, having jurisdiction of the parties and of the subject matter, has power to and should render such decree as is just and proper under all the facts and circumstances of the case." (p. 871.)

*Kuhn v. Kuhn,* 112 Kan. 155, 210 Pac. 343, was where after the death of the testator the devisees met and entered into a contract of partition of real property, and the court upheld such subsequent contract.

The case of *Parks v. Snyder,* 126 Kan. 446, 268 Pac. 814, was where the heirs of an intestate entered into a partition agreement and one of the heirs owed the estate, and in an action to enforce the agreement his share was held chargeable with the same and interest thereon.

The following is a general rule stated in the syllabus in *Thresher Co. v. Judd,* 104 Kan. 757, 180 Pac. 763:

"As a general rule, a court in decreeing partition has power to adjust the equitable rights of all the parties interested in the estate, so far as they relate to and grow out of the relation of the parties to the common property." (Syl. ¶ 1.)

All the facts in this case relate to matters occurring after they became joint tenants and therefore grew out of the common property. Another case along this line is the recent one of *Dawson v. Dawson,* 136 Kan. 471, 16 P. 2d 946, where partition was regularly granted, then followed a foreclosure action against one of the five owners in favor of the other four before the partition was put into effect, and the main controversy was as to the priority of the lien of the cotenants over an outside creditor. Our attention has not been directed to any partition action where the district court ascertained and decreed an indebtedness of a devisee to the estate of the testator based on an instrument executed before the execution of the will.

R. S. 20-1101 gives the probate court jurisdiction over certain matters, the seventh item of which is—

". . . to have and exercise the jurisdiction and authority provided by law respecting executors and administrators, and the settlement of the estates of deceased persons."

The findings of the trial court show that the will had been admitted to probate in the probate court of Linn county. In *Correll v. Vance,* 127 Kan. 840, 275 Pac. 174, it was held:

"Where a party has a plain and adequate remedy by an ordinary legal proceeding in a probate court, touching a matter over which the probate court is already exercising jurisdiction with ample power to grant the relief prayed, he may not invoke the jurisdiction of the district court to accomplish the same purpose." (Syl.)

It was held in the case of *Keith v. Guthrie,* 59 Kan. 200, 52 Pac. 435, that—

"In matters pertaining to the distribution of a decedent's estate the probate court has exclusive jurisdiction subject to appeal to the district court." (Syl. ¶ 1. See, also, *Holden v. Spier,* 65 Kan. 412, 70 Pac. 348.)

The original jurisdiction of the matter here involved concerning the collection of debts owing to the estate rested exclusively in the probate court where the administration of the estate was pending.

We do not think the district court by its findings or conclusions read into its construction of the will the statements contained in the instrument signed by the three children before the making of the will. It is only the result reached by the court that gave the construction that effect.

We do not think the findings of fact support the conclusion of the trial court that the three children of the deceased are now estopped from denying the binding force and effect of the instrument signed by them. In the case of *Street Lighting Co. v. City of Wichita,* 101 Kan. 452, 168 Pac. 1090, it was held:

"Where the element of estoppel is involved in a waiver of a contract right, there must be some willful misrepresentation or fraudulent conduct tending to mislead or prevent the other party to the contract from doing what it is privileged to do to protect its rights." (Syl. ¶ 2.)

In *Schott v. Linscott,* 80 Kan. 536, 103 Pac. 997, the elements of estoppel are stated, and without here enumerating them it must be said that the findings nowhere state that the representations contained in the written document were known to the parties estopped and unknown to the party claiming the benefit of the estoppel. If the relation consists of the three children on one side and the testator on the other, no one knew better about the indebtedness of the children to him than he did himself, and there could have been no misrepresentation or concealment in the matter. The one here really claiming the benefit of the estoppel is the daughter Mary, and some of the grandchildren join her, and she is one of the parties making the representations.

Estoppel was found in the case of *Anderson v. Stockwell,* 130 Kan.

103, 285 Pac. 526, but that was a foreclosure case and the acquiescence therein was the basis for the estoppel in the foreclosure case.

The findings do not support the conclusion of the trial court as to the question of estoppel, and for this reason, and for the want of jurisdiction of the district court to try and determine in a partition action matters of indebtedness to the estate of a testator when the settlement of his estate is pending in the probate court, the ·conclusions and judgment in these respects are set aside.

The judgment is reversed, and the cause is remanded for further consideration and decision along the lines herein indicated.