No. 37,297

A. N. Thomas and Lovie E. Thomas, husband and wife, *Appellants*,
v. Henry Kliesen, J. F. Winters and A. F. Schuetz, Trustees,
(C. J. Knop, Harold Kottwitz, R. C. Griffiths, W. W. Rinker,
E. W. Ficken, Frank Schulte, Will Edman and H. H. Hardy,
Intervenors), *Appellees.*

(201 P. 2d 663)

Opinion filed January 22, 1949.

*Donald C. Allen,* of Wichita, argued the cause, and *Payne H. Ratner, Charles F. McClintock, Richard B. Clausing* and *Louise Mattox,* all of Wichita, were with him on the briefs for the appellants.

*W. A. Kahrs* and *Dale M. Bryant,* both of Wichita, argued the cause, and *Robert H. Nelson, Morris H. Cundiff, John C. Frank* and *Garner E. Shriver,* all of Wichita, were with them on the briefs for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action to have a voting trust agreement declared null and void and for supplemental relief.

The matters in issue are rather fully covered in the findings of fact later mentioned, and for that reason the pleadings are summarized.

It was alleged that plaintiffs were husband and wife and on September 29, 1946, were the joint owners of 25,500 shares of The Thomas Hydraulic Speed Control, Inc., a Kansas corporation, and hereafter referred to generally as the corporation; that on that date they executed a certain voting trust agreement, a copy of which was attached to the petition; that the defendants and A. N. Thomas each accepted the office of trustee thereunder and from that date

until August 22, 1947, assumed to act as trustees; that the purpose and intent of the trust was to obtain stockholders owning at least seventy-five percent of the stock as depositors under the trust, that all of the defendants agreed to sign as depositors, and that such purpose and intent had failed; and that a further purpose was to continue the control of the corporation in the hands of those familiar with its affairs. It was further alleged that on August 22, 1947, no other stockholder had signed as depositor and for that reason execution by the plaintiffs was without consideration; that plaintiffs made demand on defendants for return of their stock; that since the last date the trust agreement had been and remained void, revocable and revoked, and notwithstanding defendants had failed to surrender plaintiffs' stock. Plaintiffs prayed for a decree finding the trust agreement null and void and for injunctive relief against the defendants.

The voting trust agreement was between Kliesen, Winters and Schuetz (defendants) and A. N. Thomas (plaintiff) denominated as trustees, and those holding Voting Trust Certificates, as provided for in the agreement. In two whereas clauses, it was stated that the stock of the corporation was widely scattered among various parties, with the exception of A. N. Thomas, and that it was the desire to continue control of the corporation in the hands of those familiar with its affairs, and it was agreed that in consideration of deposit with the trustees of certificates of shares, the trustees were to deliver to the depositors Voting Trust Certificates of specified form.

The defendants answered, making admissions which need not be noted, and denying they ever agreed to deposit their individually owned stock, or that it was ever the intention or purpose of the trust agreement to obtain the deposit of seventy-five percent of the stock or any stock other than that actually deposited by the plaintiffs, or that it was the intent and purpose to do anything other than as set forth in the trust agreement. They then alleged at length their version of the preliminaries to and the execution of that agreement, and that in reliance upon its execution lenders loaned the corporation moneys and additional shares of stock were sold, to the benefit of plaintiffs and plaintiffs were estopped to have the agreement set aside; that plaintiffs made no complaint until about August 22, 1947, and during all of the time knew that no other stockholders had signed the trust agreement and knew that

it was not intended for any others to sign it in order to make the agreement valid; that the defendant trustees accepted the terms of the trust, assumed their responsibilities and gave time and attention to their duties, in reliance on the execution of the trust and the deposit of shares by plaintiffs; that A. N. Thomas acted for nearly eleven months as a trustee without any objection or demand by him that the other trustees accept the agreement and deposit their stock, and thereby plaintiffs waived any claim they might have had, if any existed, to have the trust agreement set aside; that at all times plaintiffs knew and intended that existing stockholders, prospective purchasers of stock, prospective creditors and the defendant trustees should act and rely upon execution of the trust agreement and by reason thereof plaintiffs were guilty of laches.

Upon permission granted eight persons filed an intervening petition, setting forth in detail that each had purchased stock or additional stock in reliance upon the plaintiffs having deposited their stock under the voting trust agreement, and they prayed that plaintiffs be denied relief.

Plaintiffs' reply to defendants' answer, their answer to the intervening petition and their amended pleadings thereto need not be noticed separately.

Upon the issues so joined a trial was had, at the conclusion of which the cause was taken under advisement, leave being granted to file requested findings of fact and conclusions of law and to submit written briefs and agreements, and each party filed such requests and briefs. Upon consideration the trial court made findings of fact and conclusions of law which are appended to this opinion as a part hereof. In accordance with its findings and conclusions, that court held the voting trust agreement to be valid and enforceable, and rendered judgment in favor of the defendants and the intervenors and against the plaintiffs.

Plaintiffs' motion for a new trial and their objections to the findings of fact and conclusions of law were overruled and they perfected their appeal to this court.

Appellants, recognizing that this court will not weigh conflicting evidence, make no direct attack on the findings of fact, but state that their argument, presented under eight headings, is based upon the findings of fact, the appellees' evidence and, occasionally, the undisputed evidence of the appellants.

Appellants' first contention, that the trial court erred in its conclusion of law that they were estopped for the reason the findings of fact are not sufficient to support the conclusion, is, in a sense, preliminary to their later contentions that if they were sole settlors and sole beneficiaries of the voting trust agreement, they had power to revoke even though by its terms the trust was said to be irrevocable; that they were the sole beneficiaries; that the only purpose of the trust was to continue the control of the corporation in the hands of those familiar with its affairs and for the benefit of the depositing stockholders by procuring their stock and that of other stockholders to be deposited, and that the trial court's conclusions to the contrary were erroneous.

Appellants first direct our attention to *Wright v. Simpson*, 142 Kan. 507, 51 P. 2d 1, where it was said that findings of fact concerning a written instrument acknowledging the receipt of property, without any direct or indirect finding of any of the elements of estoppel such as representation or fraud are not sufficient to support a conclusion of law that the signers of the instrument are estopped to deny the binding force thereof, and contend that in the case at bar there is no proof of misrepresentation or fraud, and that the finding that Winters, authorized by Thomas so to do, represented that control of the company would remain under the present officers and managers, was unsupported by the evidence, being based only upon the testimony of various purchasers of stock that they relied on the fact the trust agreement stated it was irrevocable for a period of ten years. We shall not detail the testimony of Winters nor of any purchaser of stock, but our examination of the abstract and counter abstract shows the finding is supported by the evidence. The further contention that such reliance was not based on any misrepresentation or misleading conduct on the part of appellants is discussed later.

Appellants stated there are no Kansas decisions upon many of the points involved, apparently referring to their entire argument, but on the contentions now being discussed they cite only *H. M. Byllesby & Co. v. Doriot et al.*, 25 Delaware Chancery Reports 46, 12 A. 2d 603, and after directing attention to similarities of facts, quote at great length therefrom. The decision is not that of a court of last resort. In that case it appeared that Byllesby owned 75 percent of the outstanding shares of Standard, a public-utility corporation, and thereby controlled the election of a majority of the

latter's board of directors. Standard was a "holding company" within the purview of certain federal statutes, which also provided that any company owning, with power to vote, ten percent or more of the outstanding voting securities of a public-utility corporation, became itself a "holding company" unless declared otherwise by the Securities and Exchange Commission. Conceiving that being a "holding company" would render unlawful or at least seriously handicap its business of investment banking Byllesby entered into a voting trust agreement under which the legal title to and custody of the shares passed to the trustees and by the express terms of the agreement no other stockholder could deposit his shares except with Byllesby's express written consent. Its application to the Securities and Exchange Commission to be declared exempt from the provisions of the federal statute was denied, and it then sought to terminate the trust. The trustees resisted and the suit followed. Although reference is made to that opinion for a more detailed statement, upon the facts before it, that court held, in substance, that where a settlor of a trust is the sole beneficiary and not under incapacity, he may compel termination of the trust; that a "voting trust" is a trust in the accepted equitable sense and subject to the principles which regulate the administration of trusts; that a statement therein that the trust is irrevocable is not sufficient to prevent termination by the sole settlor and depositing shareholder especially where the stated purpose of the trust was the uniting of voting powers of more than one stockholder, which was never accomplished; that to constitute a person a "beneficiary" the settlor must manifest an intention to give him a beneficial interest, and that under the facts the corporation was not a beneficiary. Other rules of law noted need not be presently set forth.

In our opinion the cited case is clearly distinguishable from the case at bar. In the instant case there was no limitation permitting appellants to deny other stockholders any right to deposit their stock—there was no occasion for the settlors to create the trust to avoid consequences to any other business they might have, nor was there any situation disclosed that the purpose was not or could not be accomplished. It further appeared that the trustees had been in office only a few weeks and had performed no duties. Nor in the cited case did that court have any occasion to consider the financial situation of the corporation, the fact that its stock sales were diminishing; that the purpose of the trust was to restore con-

fidence in and continuity of the management, and that after the trust was completed moneys were borrowed and sales of stock were made to purchasers who knew of and relied upon the fact such a trust had been created.

In the cited case, the Delaware court held that because Byllesby had power to prevent other stockholders from becoming depositors under the trust, it was the sole settlor and that mere legal title and custody of stock certificates, and a right to compensation for their services, did not make the trustees beneficiaries. Appellants argue that although in the instant case other stockholders could have deposited their stock none did so and therefore they are the sole settlors. We need not determine the soundness of that contention for we think it clear they were not the sole beneficiaries, either under the terms of the trust agreement or under what occurred. One of the purposes stated was to continue control of the corporation in the hands of those familiar with its affairs, and such a purpose was for the benefit not only of the settlors but of all other stockholders. The question of benefits cannot be entirely dissociated from whether, under the circumstances, appellants are in position to rescind their agreement, a matter treated later.

Appellants, arguing that the only purpose of the trust agreement was to continue control in the hands of those familiar with the corporation's affairs, recognize a deviation from the Byllesby case, where there was no proof of subsequent sales of stock or of loans made in reliance upon the trust agreement, but argue, from some language used in the cited case, that because shareholders had a right to but did not deposit their stock they were unwilling to accept any disadvantages of the agreement. The inference is that for that reason they were not beneficiaries. It may be conceded the argument may be sound as to that stock held prior to the date of the trust agreement, but that the same result follows as to stock sold after the agreement does not follow.

Appellants concede that the testimony tended to prove, and the trial court found, that one of the purposes of the trust agreement was to facilitate sales of stock. The trial court further found that on the faith of the trust agreement, all of the then remaining unsold stock was sold. They contend the trial court's conclusion of law that they were estopped to deny validity of the trust agreement, on the above and other findings, was erroneous and direct our attention to *Schott v. Linscott*, 80 Kan. 536, 103 Pac. 997, where the ele-

ments necessary to constitute an estoppel are set forth; to *Street Lighting Co. v. City of Wichita*, 101 Kan. 452, 168 Pac. 1090, where it was said there must be some willful misrepresentation; and to *Cox v. Watkins*, 149 Kan. 209, 87 P. 2d 243, where it was said there must be false representation or false concealment of material known facts from one ignorant thereof with the intention they be acted on and that the one to whom they were made must have relied and acted thereon to his prejudice. Textbook authorities to the same effect are also cited. It may be observed that had appellants moved immediately after the trust agreement was made to have avoided it, their position would have been much different than when they did institute their action. At the latter date, in reliance upon the agreement, additional stock had been sold. What induced the purchasers to acquire that stock? The conduct of appellants in making the agreement which amounted to a representation of known facts, those facts being fully known to appellants at the time they advised the stockholders of what they had done; subsequent purchasers of stock had a right to believe the trust agreement would stand or if the settlors had intended it would not, that intention was not communicated to subsequent purchasers at the time they purchased and such undisclosed intention would be constructively fraudulent; appellants' conduct was done with the intention it would be acted upon, and it was relied upon and acted upon by subsequent purchasers of stock, and, if the agreement is not now to stand the position of those purchasers is for the worse, for the stability of the corporation is imperiled. The record fully discloses that the acts of the appellants in creating and executing the trust agreement were deliberate; they gave publicity to their action; they invited the subsequent sale of the undisposed stock to the advantage of the corporation in which they were the largest stockholders and to their own advantage, and to now permit them to set aside the trust agreement with the corresponding advantage to themselves would not be equitable or just.

As the sales of stock subsequent to the trust agreement are decisive we need not comment upon loans made in reliance on that agreement.

Other matters urged by appellants will be noticed briefly.

One is that appellants should have been permitted to amend their pleadings to conform to proof that each subsequent purchaser of stock did so with knowledge of all of the terms of the trust agreement. The essence of the argument is that when subsequent pur-

chasers purchased with notice and did not become depositors under the agreement they could not rely thereon; and that appellants could not plead estoppel of the purchasers until estoppel had been pleaded against them. In view of the full consideration of the evidence by the trial court as appears from its findings of fact, the complaint is technical rather than substantial. In any event the premise for the contention of estoppel against estoppel is not sound, for at no place does it appear that the validity of the trust agreement was dependent upon deposit of the stock of any subsequent purchaser. The trust agreement was stated in the present tense, made no specific reference to other than present stockholders, and it is debatable that a subsequent stockholder could deposit his stock thereunder.

In view of what has been said we need not comment on appellants' contention that the trust agreement was revocable, even though drawn in compliance with G. S. 1945 Supp. 17-3307, nor the separately stated contention that it was the intent and purpose of the trust agreement to procure deposit of stock other than that of the appellants, and as that had not been done the purpose had failed, and therefore revocation should have been decreed. What has been said heretofore answers the latter contention.

A careful examination and consideration of the record and the contentions of error lead to the conclusion that the judgment of the trial court should be and it is affirmed.

---

## APPENDIX

### "Findings of Fact and Conclusions of Law

"The Court makes the following Findings of Fact herein:

"No. 1. At all times herein mentioned, plaintiffs were husband and wife residing in Sedgwick County, Kansas. Plaintiff, A. N. Thomas, is about seventy-seven years of age and since about 1907 has spent a large amount of time developing the inventions and improvements thereon of a manually variable hydraulic drive.

"He has spent practically all of his time since about 1925 in the development of the invention. Basic patents and supplemental patents were obtained by the plaintiffs and when The Thomas Hydraulic Speed Controls, Inc., was organized the plaintiffs assigned their patents and future patent rights to the corporation in exchange for 25,500 shares of the capital stock of said corporation, thereby maintaining control of the corporation.

"The inventions have been successful and are the basis for all items manufactured by the corporation.

"The first actual mass production of the drives began in the latter part of 1946. Until that time the company carried on expensive research developments. The drives now being manufactured by the company are for installation on self-propelled combines, either in the field or factory.

"No. 2. The Thomas Hydraulic Speed Controls, Inc., is a Kansas corporation, organized under the laws of Kansas on April 10, 1939, with an authorized capital stock at that time of 50,000 shares; 25,500 shares being issued to the plaintiffs as aforesaid.

"The corporation commenced its operations in Dodge City, Kansas. However, in January, 1946, it moved its registered office and principal place of business to 1329 South McLean Boulevard, Wichita, Kansas.

"From the inception of the corporation to the date of trial, the plaintiff, A. N. Thomas, was its active president. After the corporation finally got in production, sales have been successful with the showing of a nice profit.

"No. 3. Just prior to January 1, 1946, the corporation secured authorization from the corporation commission of the State of Kansas to promote and sell an additional 20,000 shares of nonpar stock of the corporation at the rate of $10.00 per share. The additional shares were placed on the market and sales commenced to the public shortly after the first of December, 1945, which subscriptions were subject only to the approval of the Blue Sky Commission, which was granted March 6, 1946.

"The sales continued until 12,801 shares of said new issue were sold; and on about the forepart of September, 1946, the sale of stock diminished to the point where the company was in dire need of cash for the purpose of going into production, including quarters and machinery.

"No. 4. About the forepart of September, 1946, the plaintiff, A. N. Thomas, discussed with J. F. Winters, one of the officers of the company, the matter in the decline in the sale of the corporate stock during the month of August, 1946, and the need of selling more stock in order to raise additional funds to meet the corporation's need; and also discussed the matter of keeping the corporation under the control of the present officers and board of directors, inasmuch as additional stock had been sold and the plaintiffs no longer held the controlling interest in said corporation.

"At said time, the said J. F. Winters discussed with A. N. Thomas, the matter of placing the Thomas block of 25,500 shares of stock in a voting trust in order to give old stockholders and prospective stock purchasers more confidence in the permanency of the operation and control of the corporation and thereby assist in the sale of stock and in the raising of additional funds for the immediate operation of the corporation.

"No. 5. On or about September 5, 1946, pursuant to said conversation, the plaintiffs, A. N. Thomas and Lovie Thomas, in company with J. F. Winters, went to the office of Austin M. Cowan, attorney at law, Wichita, Kansas, who was also legal counsel for the corporation, and discussed with Mr. Cowan the condition of the corporation, the necessity of keeping control in the present board of directors and the necessity to sell more stock to raise additional funds for the operation of the corporation, and whether their stock could be placed in a voting trust.

"After being advised by Mr. Cowan that such could be done, Mr. Cowan proceeded as instructed by the plaintiffs, to prepare a voting trust agreement, naming as trustee the said J. F. Winters, one, Henry Kliesen, Dodge City, Kansas, and A. F. Schuetz, of Great Bend, Kansas, and the plaintiff, A. N. Thomas. That said trustees, after some discussion, accepted and signed the trust agreement which had been executed by the plaintiffs as disclosed by the trust agreement introduced in evidence.

"Said trust agreement was executed on or about the 17th day of September, 1946, and plaintiffs' 25,500 shares of stock were deposited in accordance therewith. That subsequent to the execution of the trust agreement by the plaintiffs and the trustees named, application was made to the corporation commission of the State of Kansas for an order of said commission authorizing the transfer of said 25,500 shares of Thomas' stock to said trustees under the terms of the voting trust agreement. About October 2, 1946, the corporation commission relying upon the validity and existence of the voting trust agreement, did order and authorize, as shown by the trust agreement, the transfer of said stock to the trustees and the deposit of voting trust certificates to A. N. Thomas and Lovie Thomas, under said trust.

"No. 6. Immediately after the execution of the trust agreement, Henry Kliesen loaned to the corporation $1000.00 as he had promised he would do upon the execution of said voting trust agreement by the Thomases; and immediately thereafter stock sales were resumed and J. F. Winters being authorized by the plaintiff, A. N. Thomas, solicited stockholders and private individuals to purchase stock, explaining to said prospective purchasers the fact that the Thomases had placed their 25,500 shares of stock in a voting trust agreement and that the control of the company would thereby remain under the present officers and directors; and on the faith of this agreement, the remainder of the 20,000 shares of stock were sold to various old stockholders and directors and individuals.

"In addition thereto, the defendants Kliesen and Schuetz and one, Griffith, a stockholder, purchased a building in the City of Wichita for the approximate sum of $20,000.00 for the use of the defendant corporation, at an agreed rental to said corporation of $300.00 per month.

"That additional loans were made by officers and members of the corporation to the corporation, on the faith of the trust agreement. However, all loans so made have been paid by the corporation.

"No. 7. Following the execution of said agreement at a trustees meeting on October 12, 1946, the defendants in reliance upon the agreement, advanced to the trust, moneys with which to pay Austin M. Cowan for his fees and expenses in the preparation of the voting trust agreement, and for securing an order of the corporation commission for the transfer of the 25,500 shares of the stock to the trustees. That plaintiff, A. N. Thomas, was present at said meeting and participated.

"On January 14, 1947, at a trustees meeting at which A. N. Thomas presided as chairman, action was taken to carry out the terms of the trust, and

acting under said voting trust agreement, unanimously determined the manner of voting said 25,500 shares of stock in the following manner:

6,750 shares for A. N. Thomas as director,

6,250 shares for Henry Kliesen as director,

6,250 shares for A. F. Schuetz as director,

6,250 shares for Harvey Jones as director.

"At said annual stockholders meeting immediately following, the mentioned directors, as proposed by the trustees under the trust, were unanimously elected by all of the stockholders present, the board of directors and management of said corporation to remain the same for the ensuing year.

"No. 8. At the stockholders meeting held on January 14, 1947, plaintiff, A. N. Thomas, then president of said corporation, caused Mr. Harvey F. Jones, then vice president, to preside at the meeting and among other things to announce to the stockholders present that the plaintiffs had deposited their 25,500 shares of stock in a voting trust agreement and that all stockholders wishing to do so, were invited to deposit their stock therein together with the plaintiff and obtain voting trust certificates in lieu thereof.

"However, no other stockholder of said corporation elected to so deposit any of their stock.

"No. 9. Both the corporation and the plaintiffs directly and indirectly, benefited from the money borrowed, the sale of stock and from the services rendered by the trustees, relying upon said trust agreement.

"No. 10. From the time of the execution of said agreement to wit, on or about September 17, 1946, until July, 1947, the plaintiffs with full knowledge of the terms and conditions of said voting trust agreement acted under said agreement and acquiesced in all of its terms and conditions. And, A. N. Thomas immediately with said trustees named in said trust agreement, advised stockholders at the general stockholders meeting of said agreement, caused stock to be sold, and money to be loaned on the faith of said agreement, including the purchase of property by member of the corporation for the use of said corporation on a rental basis, and profited and accepted all benefits accruing either directly or indirectly to themselves or the corporation, by reason of the reliance placed by others upon the continued existence of said voting trust.

"Conclusions of Law

"No. 1. The voting trust agreement which is the subject of this action was executed in accordance with Section 17-3307 of the 1945 Supplement to the General Statutes of Kansas, and it is a valid and enforceable agreement.

"No. 2. The plaintiffs are estopped to deny the validity of the trust agreement.

"No. 3. The defendants and intervenors shall have judgment against the plaintiffs for costs of this action and the expense incurred in connection therewith."